COMMONWEALTH *vs.* ALEXANDER BOLLING.

Suffolk. February 10, 2012. - June 12, 2012.

Present: IRELAND, C.J., CORDY, BOTSFORD, DUFFLY, & LENK, JJ.

*Homicide. Armed Assault with Intent to Murder. Firearms. Intent. Defense of Others. Self-Defense. Joint Enterprise. Evidence,* Intent, Joint venturer, Self-defense. *Practice, Criminal,* Capital case, Instructions to jury, Conduct of prosecutor, Argument by prosecutor.

At the trial of indictments charging the defendant, inter alia, with murder in the first degree, the evidence of deliberate premeditation was sufficient to support the conviction of the defendant with respect to one victim, where the defendant brought a loaded firearm to the scene of the crime; where the jury reasonably could have inferred from the sequence and character of events before shots were fired that the defendant and a codefendant planned to meet the victim for the purpose of killing him; and where, even if the defendant and the codefendant had not formed a plan to kill the victim before his arrival at the scene of the crime, the defendant could have independently determined to kill the victim, in that the defendant had thirty to forty seconds to deliberate between the victim's arrival and the shooting. [445-446]

At a murder trial, the judge's instruction to the jury on excessive use of force did not improperly give the jury the false impression that they could convict the defendant of murder, rather than manslaughter, if the Commonwealth failed to disprove that the defendant was acting in "proper" self-defense or defense of another but did prove that the defendant employed excessive defensive force. [446-449]

At the trial of indictments charging the defendant, inter alia, with armed assault with intent to murder, the judge erred in failing to instruct the jury that in order to find the defendant guilty of this crime, they would have to find either that a codefendant committed the assault and the defendant participated while knowing that the codefendant had a gun, or that the defendant himself directly committed the assault with a gun; further, the omission of the instruction created a substantial risk of a miscarriage of justice, in that the Commonwealth's evidence on the question whether the defendant knew the codefendant had a gun was not overwhelming, and the nature of the error was serious, given that the physical evidence supported the theory that the codefendant, rather than the defendant, shot the victim of the armed assault. [449-452]

This court, in reversing a conviction on an indictment charging armed assault with intent to murder on the ground that the omission of an instruction created a substantial risk of a miscarriage of justice, concluded that the defendant could be retried on that indictment, where the evidence was suf-

ficient to permit a rational jury to conclude beyond a reasonable doubt that a codefendant assaulted the victim with a dangerous weapon, with the intent to kill him; that the defendant knowingly participated in the crime; and that the defendant knew the codefendant had a firearm and shared her intent to kill the victim. [453-454]

At a criminal trial, the judge did not abuse his discretion in permitting the prosecutor to ask a victim a question that had an adequate basis in the record. [454-455]

At a criminal trial, although the prosecutor, in closing argument, improperly argued facts not in evidence, the judge's curative instruction, delivered immediately after, mitigated any potential prejudice. [455]

At a criminal trial involving the defendant and a codefendant, a portion of the prosecutor's closing argument was merely a comment on the fact that statements made by the codefendant arguably conflicted with a claim of self-defense [455-456]; further, although the prosecutor erred in implying that the codefendant's statements in a letter could be attributed to the defendant, no substantial likelihood of a miscarriage of justice arose, where the jury were made aware, both before and after the prosecutor's statement, that nothing in that letter could be used as evidence against the defendant [456-457].

At a criminal trial, the prosecutor, in closing argument, did not mischaracterize a gap in surveillance photographs or misstate the burden of proof; likewise, the prosecutor did not mischaracterize the defendant's testimony to attack his credibility. [457]

INDICTMENTS found and returned in the Superior Court Department on March 7, 2008.

The cases were tried before *Frank M. Gaziano*, J.

*Chrystal A. Murray* for the defendant.

*Teresa K. Anderson*, Assistant District Attorney (*David J. Fredette & Julie Sunkle Higgins*, Assistant District Attorneys, with her) for the Commonwealth.

BOTSFORD, J. The defendant, Alexander Bolling, was convicted of murder in the first degree of Jesse Calhoun on a theory of deliberate premeditation, murder in the second degree of Robert Turner, armed assault with intent to murder of Antoine Phillips, and unlawful possession of a firearm. The charges concerned an incident that took place in the street outside the apartment of the defendant's girl friend and codefendant, Tonieka Britt.[1] In this direct appeal, the defendant argues that the evidence was

---

[1]The defendant and Tonieka Britt were tried together, but Britt's appeal from her convictions of murder in the first degree of both Jesse Calhoun and Robert Turner, armed assault with intent to murder Antoine Phillips, and unlawful possession of a firearm is not currently before the court.

insufficient to convict him of deliberately premeditated murder and of armed assault with intent to murder. He also challenges two jury instructions and claims improper direct examination and closing argument by the trial prosecutor. We affirm the defendant's conviction of murder in the first degree and decline to exercise our power to grant relief under G. L. c. 278, § 33E. We affirm his conviction of murder in the second degree. Because we conclude that the omission of a jury instruction regarding the defendant's knowledge that Britt was armed created a substantial risk of a miscarriage of justice, we reverse the defendant's conviction of armed assault with intent to murder. Finally, we affirm the defendant's conviction of unlawful possession of a firearm.

1. *Background.* a. *The Commonwealth's case.* Because there are challenges to the sufficiency of the evidence as to two of the charges, we recite the facts in the light most favorable to the Commonwealth, reserving additional facts for later discussion. The shootings at issue occurred in the early morning hours of August 2, 2007, outside Britt's apartment at 37 Williams Street in the Roxbury section of Boston. In the summer of 2007, the defendant was dating Britt, who previously had been in a dating relationship with the victim, Calhoun. After Britt and Calhoun's relationship ended, the two were involved in a dispute over $2,200 that Britt had received as an insurance settlement after an automobile accident. Calhoun wanted the money.

Britt told her friend, Stephen Hodges, that Calhoun was from "the Lenox Street projects" and associated with a gang there who were known for "carrying guns" and "beating up on women." Britt complained numerous times to Hodges about Calhoun's harassment, including an incident that occurred four or five days before the shootings, when Calhoun followed her with a group of people. Hodges concluded that Britt was afraid of Calhoun. Britt told Hodges's girl friend that "Calhoun would magically appear behind her sometimes and jump on her." Sometime during the month prior to the shootings, Britt told the couple that Calhoun had pulled her hair out of her head, leaving bald spots. Britt also told her cousin, Lisa White, that Calhoun was threatening her constantly.[2]

On the night of August 1, Britt visited Hodges at his home

---

[2]This evidence was admitted solely to show Britt's mental condition in the

and smoked marijuana with him. While she was there, she took a nine millimeter pistol out of her waistband and placed it on the bed. Britt left between 11:30 P.M. and midnight, taking the gun with her.

Meanwhile, Calhoun and his friends, Turner and Phillips, were at a bar. After leaving there, Calhoun drove Phillips and Turner to Phillips's girl friend's home. While Phillips and Turner were there, they both received telephone calls from Calhoun. Calhoun told Phillips he was going to Williams Street to get his money from Britt. Calhoun asked Phillips to bring the "thing" or the "hammer," meaning a gun. Calhoun then came back to pick up Phillips and Turner. Calhoun did not seem upset or angry. Phillips gave the gun to Turner, who put it in his waistband.

At 2 A.M., Britt drove down Williams Street in a silver car and parked across the street from her apartment building. Approximately seventeen seconds later, Calhoun drove down the street and parked his car across from Britt, on the same side of the road as her apartment building. Within thirty seconds of Calhoun's arrival, Britt got out of the silver car and walked across the street toward 37 Williams Street. Calhoun and Turner then got out of Calhoun's car. Phillips also got out of the car but was talking on his cellular telephone. Calhoun and Britt spoke; there was no yelling or screaming. Calhoun did not put his hands on Britt, and neither Calhoun nor Turner had a gun in his hand.

At this point, the defendant walked up to the group and shot Calhoun once in the left side of his head. Calhoun fell immediately to the ground. The defendant then turned and shot Turner twice, in the torso and arm. Britt also shot Turner twice, once in the head and once in the back. Phillips, who had been standing next to the passenger side of Calhoun's car, dove into the back seat for cover. Britt fired several times into the car, hitting Phillips in the cheek, collarbone, chest, and right upper arm.[3] Phillips covered his head and pretended to be dead. After

---

relationship between Britt and Calhoun, and not for the truth of Britt's statements.

[3] As will be discussed in more detail *infra*, the defendant testified that Calhoun fell on top of him and knocked him to the ground, and that he remained on the ground until he heard the gunfire stop.

he heard Britt's car drive away, he got up and looked at Calhoun and Turner, seeing Turner lying face down on the ground with his arm draped over Calhoun's chest. Phillips drove Calhoun's car to a nearby police station. He was bleeding profusely, and his tongue was partially severed. Phillips was treated by paramedics at the station and later transported to a hospital, where he received medical treatment, including having his jaw wired shut.

When the paramedics arrived at 37 Williams Street, they pronounced Calhoun dead. The cause of death was the single gunshot wound to his head, which struck and damaged his spinal cord. Turner was transported to a hospital, but showed no signs of life. The cause of death was determined to be gunshot wounds to his head and torso.

No guns were found on Calhoun or Turner, and none was recovered from the scene, although two police officers from the canine unit searched for weapons with their dogs. Officers nonetheless collected a significant amount of evidence from the scene, including cellular telephones registered to the defendant's mother and to Britt. The police also discovered a surveillance camera mounted on a nearby building that had taken still photographs of the area in front of 37 Williams Street at approximately eight second intervals during the entire incident.

Meanwhile, Britt and the defendant drove to Hodges's home, arriving just after 2 A.M. Britt carried the same nine millimeter gun that she had placed on the bed earlier, and the defendant had a .40 caliber pistol. Britt asked Hodges to take the guns; he put them in the trash. The next day, while Britt and the defendant remained at Hodges's home, Hodges took the guns to Stoughton, where he destroyed them with a sledgehammer and threw the pieces into a lake. Before leaving Hodges's home, the defendant and Britt cut their hair short. Officers arrested Britt at her aunt's house in Taunton in December, 2007. The defendant was arrested in March, 2008.

b. *The defendant's testimony.* At trial, Britt and the defendant both claimed self-defense and defense of another, based on Britt's fear of Calhoun and her past violent relationship with him. The defendant testified; Britt did not. He stated that Britt had picked him up at his home at about 1:30 A.M. on August 2.

On their way to Britt's apartment, a car driven by Calhoun pulled up next to them at a stop light but then went a different way. When the defendant and Britt arrived on Williams Street, they parked across the street from Britt's apartment, then saw Calhoun's car come down the street behind them and park right in front of Britt's apartment. The two of them decided to try to walk past Calhoun's car and enter the apartment anyway; they did not drive away because they did not want Calhoun to follow them. By the time the defendant and Britt had reached the sidewalk in front of 37 Williams Street, Calhoun and Turner were "right up on" them. Calhoun walked past the defendant and grabbed Britt by her hair. The defendant looked in the other direction toward Turner. When the defendant looked back, Calhoun was reaching for his waist. Because the defendant thought Calhoun was going to kill Britt, he shot Calhoun. The defendant then saw Turner reaching to grab him, so he shot Turner. As the defendant fired at Turner, Calhoun fell toward the defendant, knocking him to the ground, and his gun discharged "a couple of" times as he fell. The defendant heard more shots, so he stayed on the ground until the shooting stopped, then got up and ran back to the car, where Britt was waiting. He did not know that Britt had a gun with her until he got back to the car.

2. *Discussion*. a. *Murder in the first degree.* The defendant claims two errors related to his conviction of murder in the first degree of Calhoun, challenging the sufficiency of the evidence that the killing was premeditated, as well as the wording of the jury instruction on excessive use of force in self-defense. We consider these claims separately.

i. *Sufficiency of the evidence of premeditation.* At the close of the Commonwealth's case, the defendant moved for required findings of not guilty on the charges of murder in the first and second degrees; his motion was denied. On appeal, the defendant challenges the sufficiency of the evidence of premeditation underlying his conviction of murder in the first degree of Calhoun. Thus, we examine only the adequacy of the relevant evidence. See *Commonwealth* v. *Gambora*, 457 Mass. 715, 732 (2010), quoting *Commonwealth* v. *Coleman*, 434 Mass. 165, 167 (2001). Specifically, we assess "whether the Commonwealth produced enough evidence, taken in the light most favorable to

the Commonwealth, to satisfy any rational trier of fact beyond a reasonable doubt that [this] element of the crime was present." *Commonwealth* v. *Hamilton*, 459 Mass. 422, 426 (2011), quoting *Commonwealth* v. *Hilton*, 398 Mass. 63, 64 (1986).

In order to prove deliberate premeditation, the Commonwealth must show that "the plan to kill was formed after deliberation and reflection. However, no particular length of time is required in order for deliberate premeditation to be found." *Commonwealth* v. *Caine*, 366 Mass. 366, 374 (1974), and cases cited. "[A] decision to kill may be formed in a few seconds." *Commonwealth* v. *Whitaker*, 460 Mass. 409, 419 (2011).

There was sufficient evidence of premeditation to support the defendant's conviction. First, the defendant brought a loaded firearm to the scene of the crime, an act that we previously have held sufficient to support an inference of premeditation. See *Commonwealth* v. *Ruci*, 409 Mass. 94, 96-97 (1991), and cases cited. Second, the jury reasonably could have inferred from the sequence and character of events before shots were fired that the defendant and Britt planned to meet Calhoun on Williams Street for the purpose of killing him so that he could no longer harass Britt. Only a few seconds separated the arrival of the two cars, yet Phillips testified that Calhoun had not followed anyone to Williams Street; and according to Phillips, Britt and Calhoun had a brief conversation without yelling or screaming, and then the defendant "walked up" and shot Calhoun. Third, even if the defendant and Britt had not formed a plan to kill Calhoun before his arrival at Williams Street, the defendant could have independently determined to kill him on arriving on Williams Street and seeing Calhoun pull up in front of Britt's apartment. The defendant had approximately thirty to forty seconds to deliberate between Calhoun's arrival on Williams Street and the shootings. From this evidence concerning the passage of time and the way the defendant simply walked up to Calhoun and shot him, a rational jury could have inferred that the defendant deliberately premeditated the murder of Calhoun.

ii. *Instruction on excessive use of force.* The defendant argues that the judge's instruction on excessive use of force gave the jury the false impression that they could convict the defendant

of murder, rather than manslaughter, if the Commonwealth failed to disprove that the defendant was acting in "proper" self-defense or defense of another but did prove that the defendant employed excessive defensive force. We review the instruction, to which the defendant did not object at trial, for a substantial likelihood of a miscarriage of justice.[4] See *Commonwealth* v. *Rodriquez,* 461 Mass. 100, 106 (2011).

The judge instructed the jury on deliberately premeditated murder and murder in the second degree with the appropriate supplemental instructions on killing as a result of self-defense or defense of another, in accordance with our model jury instructions. See Model Jury Instructions on Homicide 6-8, 11-14, 20-21, 60-61 (1999). He then instructed on voluntary manslaughter and the factors that mitigate murder to manslaughter, including self-defense and defense of another, again conforming to the model instructions. See *id.* at 27-30, 55-58. The instructions given clearly state that a defendant cannot be convicted of murder if he acted in self-defense or defense of another but used excessive force:

"Both the crimes of murder and voluntary manslaughter require proof of an unlawful killing, but the killing may be the crime of voluntary manslaughter if it occurred under mitigating circumstances so that the Commonwealth cannot prove beyond a reasonable doubt that the defendant acted with malice. *In order to obtain a conviction of murder, the Commonwealth must prove beyond a reasonable doubt the absence of these mitigating circumstances.* Based upon the evidence in this case, the mitigating circumstances you must consider are, number one, heat of passion upon reasonable provocation, *and, number two,*

[4]The instruction on excessive use of force applied also to the charges of murder in the second degree and armed assault with intent to murder, and the defendant challenges the instruction in relation to his convictions of those two crimes as well. Although we would generally review these two additional challenges only for a substantial risk of a miscarriage of justice, because excessive use of force applies to murder in the first degree, and because we consider the three challenges together, we apply to all three the substantial likelihood standard, which is more favorable to the defendant. See *Commonwealth* v. *Smith,* 460 Mass. 318, 321 n.2 (2011). Because we determine that there was no error in the instruction, the standard of review makes no difference to the outcome of the case.

*excessive use of force in self-defense or defense of another."*
(Emphases added.)

After explaining reasonable provocation, the judge then explained excessive use of force in self-defense or defense of another. It is this portion of the instruction that the defendant challenges. The judge's instruction reads:

> "The Commonwealth has the burden of proving beyond a reasonable doubt the absence of self-defense or defense of another. If the Commonwealth fails to prove beyond a reasonable doubt the absence of self-defense or defense of another, your verdict must be not guilty with respect to the crimes of murder or voluntary manslaughter. If, however, the Commonwealth does prove excessive force in an effort to defend one's self or another, you would be justified in finding the defendant guilty of voluntary manslaughter."

The defendant argues the judge should have instructed the jury that they "must" find the defendant guilty of voluntary manslaughter if he used excessive force in self-defense or defense of another. He contends that the phrase "you would be justified in finding the defendant guilty" of manslaughter implies that the jury were permitted to return a manslaughter verdict, but also were permitted to return a murder verdict. The defendant equates the judge's instruction to the erroneous instruction on excessive use of force at issue in *Commonwealth* v. *Santos*, 454 Mass. 770 (2009).

The instructions given in *Santos* were very different. There, the judge told the jury, "[E]ven if a person is entitled to use force in self-defense, he may not use excessive force in defending himself. . . . [I]f a person's conduct is not privileged when greater force or harsher means are used than reasonably appear to be necessary, then that person is not entitled to a defense of self-defense." *Id.* at 774. This instruction was erroneous because it implied that, where a defendant uses excessive force, self-defense is entirely negated and removed from the case as an issue, and no mitigation of murder to voluntary manslaughter through excessive use of force in self-defense is possible. Thus, the instruction implied that the jury were "free to return a verdict of murder if otherwise satisfied that a murder had

occurred." *Id.* Later in the same excessive use charge, the judge in *Santos* compounded the error by stating that "if the means used were unreasonable and clearly excessive in light of the existing circumstances or if the defendant himself became the attacker, then the defendant may be found guilty of murder." *Id.* at 775.[5]

In the context of the instructions before us, the judge's use of "would be justified" rather than "must" could not have given the jury the erroneous impression that excessive use of force negates the protections of self-defense entirely and permits the jury to find the defendant guilty of murder.[6] The challenged instruction concerned the Commonwealth's proving excessive force in the context of the defendant's being engaged in an effort to exercise self-defense or defense of another ("If, however, the Commonwealth does prove excessive force *in an effort to defend one's self or another*" [emphasis added]). This strengthens the conclusion that all that the instruction reasonably conveyed was a choice between verdicts of (1) not guilty because the defendant was engaging in "proper" self-defense or defense of another, and (2) voluntary manslaughter because self-defense or defense of another became "improper" through the defendant's use of excessive force. There was no suggestion that it would be permissible for the jury to return a guilty verdict of murder if the defendant had exercised excessive force in self-defense or defense of another as was true in *Santos*. There was no error.[7]

b. *Armed assault with intent to murder.* The defendant claims

[5]In *Commonwealth* v. *Santos*, 454 Mass. 770 (2009), between the two instructions described in the text, the judge stated to the jury that "if the defendant killed the victim by virtue of the use of excessive force in self-defense, the defendant *may* be found guilty of the crime of manslaughter" (emphasis added). *Id.* at 775-776. We noted that this instruction would have been correct *except* that the defendant *must* be found guilty of manslaughter. *Id.* at 776. We concluded that even if this instruction were correct, its location between two incorrect instructions meant that the "center of gravity" remained with the incorrect instructions. *Id.*, quoting *Commonwealth* v. *Acevedo*, 427 Mass. 714, 717 (1998).

[6]We note also that we have approved use of the "you would be justified" model instruction in other cases. See, e.g., *Commonwealth* v. *Young*, 461 Mass. 198, 212-213 (2012); *Commonwealth* v. *Walker*, 443 Mass. 213, 219-220 (2005).

[7]Because we reverse the defendant's conviction of assault with intent to murder on other grounds, we need not reach his challenge to the use of the

that in connection with the charge of armed assault with intent to murder Phillips, the judge should have instructed the jury that the Commonwealth must prove that the defendant knew Britt was carrying a weapon in order to find him guilty of the crime on a theory that Britt was the shooter. He also challenges the sufficiency of the evidence on the armed assault charge.

i. *Instruction on knowledge of a weapon.* The Commonwealth proceeded at trial on a joint venture theory, but in that context, presented alternative arguments: either that Britt was the main perpetrator of the assault, or that both the defendant and Britt committed assaults on Phillips.[8] On the topic of joint venture, the jury were instructed, pursuant to this court's decision in *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466 (2009), that "[t]he defendant is guilty if the Commonwealth has proved beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense," and that this theory applied (among others) to the crime of armed assault with intent to murder. However, the judge did not explain to the jury that in order to find the defendant guilty of this crime, they would have to find either that Britt committed the assault and the defendant participated while knowing Britt had a gun, or that the defendant himself directly committed the assault with a gun. Given the Commonwealth's alternate theories of guilt on the charge, the judge's omission of the instruction was error. See *Commonwealth* v. *Patterson*, 432 Mass. 767, 773 (2000), *S.C.*, 445 Mass. 626 (2005) ("To be convicted on a theory of joint venture for a crime that has possession of a weapon as one of its elements, the joint venturer must be shown to have had knowledge that the principal perpetrator had a weapon"); *Com-*

phrase "would be justified" in a supplemental instruction on excessive use of force relating to assault with intent to murder and its lesser included offense of assault with intent to kill. As suggested in *Commonwealth* v. *Santos*, 454 Mass. at 776, however, use of the word "must" would have been more appropriate than the phrase "would be justified."

[8]On appeal the Commonwealth argues that there was sufficient evidence that the defendant himself assaulted Phillips, by committing an attempted or threatened battery. Because only bullets from Britt's gun were found in or near Phillips's body, and there was no testimony that the defendant ever aimed or shot his gun at Phillips, the only reasonable conclusion is that Britt alone assaulted Phillips.

monwealth v. *Melendez*, 427 Mass. 214, 215-216 (1998) ("It is, of course, correct that joint venture guilt for the commission of a crime involving the use of a dangerous weapon may not be imposed on a defendant unless he knew that one of his companions was armed"); *Commonwealth* v. *Watson*, 388 Mass. 536, 545-546 (1983), *S.C.*, 393 Mass. 297 (1984). See also *Commonwealth* v. *Lee*, 460 Mass. 64, 68-70 (2011) (to prove that defendant shared codefendant's intent to commit crime involving use of dangerous weapon, defendant's knowledge that codefendant possessed dangerous weapon must be shown).

The Commonwealth contends that no instruction on the defendant's knowledge of Britt's weapon was required because the defendant "brought a loaded firearm to the scene and used it." This argument fails because, although the defendant did use a firearm against Calhoun and Turner, there was no evidence that the defendant used the firearm against Phillips. The judge's general instruction that a defendant must share the intent required for the offense with the codefendant was not sufficient to apprise the jury of the requirement that the defendant know that Britt was armed.[9] *Commonwealth* v. *Claudio*, 418 Mass. 103, 112 (1994) ("We reject the Commonwealth's argument that the judge's general instruction on specific intent, to the effect that the jury could not find the defendant guilty as a joint venturer unless they found that he shared 'the intent required to commit the crime in all respects,' sufficiently apprised the jury of the missing element [of the defendant's knowledge that his companions were armed]").

---

[9]Moreover, the judge also gave the general joint venture instruction prescribed by *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466 (2009) (*Zanetti* instruction), before discussing the substantive elements of the charged crimes, and did not repeat it in specific connection with the instruction on armed assault with intent to murder, which occurred twenty-six pages later in the transcript. Typically, it is sufficient to give a *Zanetti* instruction only once. Cf. *Commonwealth* v. *Mercado*, 456 Mass. 198, 207 (2010) (judges not required to "repeat portions of the general instructions on the weighing of evidence when instructing on mental impairment"). Here, however, the physical evidence that the defendant participated in the killings of Calhoun and Turner by directly shooting them was strong, but there was a lack of physical evidence of the defendant's participation in the armed assault of Phillips, e.g., no bullets from his gun were found in or near Phillips. In these circumstances, it would have been helpful to repeat the *Zanetti* instruction, with its emphasis on knowing participation, in conjunction with the instruction on armed assault with intent to murder.

Because the defendant did not object to the judge's omission of the instruction, and because the instruction relates to a crime other than murder in the first degree, we review for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Peterson*, 53 Mass. App. Ct. 388, 392 (2001). We review the entirety of the case to determine "if we have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002), quoting *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). "We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." *Commonwealth* v. *Azar*, *supra*, and cases cited.

Although there was circumstantial evidence from which the jury could have inferred that the defendant knew Britt had a gun, the strength of the Commonwealth's case on this point was not overwhelming. The defendant testified that he did not know that Britt was armed that night and did not discover that she had a gun until they both got back into the car after the shootings. Phillips also testified that he did not see Britt with a gun.

Furthermore, the nature of the error is serious, and the error was significant in the context of the evidence presented at trial. The physical evidence — consisting of the bullets found in Phillips's body and in the car, all of which came from a nine millimeter gun like the one Britt carried — overwhelmingly supported the theory that Britt, rather than the defendant, shot Phillips. The lack of instruction relieved the Commonwealth of its burden of proving beyond a reasonable doubt the defendant's knowledge that Britt had a firearm, and without such proof the defendant could not be convicted of the crime on a theory that Britt was the shooter.

Finally, it seems unlikely that the failure to request the instruction was a reasonable tactical decision because requiring the jury to make an additional finding about the defendant's state of mind before convicting him could not have prejudiced his case. In sum, the omission of the instruction did create a substantial risk of a miscarriage of justice. The defendant's conviction of armed assault with intent to murder must be reversed.

ii. *Sufficiency of the evidence.* We now turn to the sufficiency of the evidence of armed assault with intent to murder, a question we must address because, if the evidence was insufficient to support the conviction, then the defendant cannot be retried on this indictment. Because the defendant was tried on a joint venture theory, we review "whether the evidence is sufficient to permit a rational juror to conclude beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime, rather than examine the sufficiency of the evidence separately as to principal and joint venture liability." *Commonwealth* v. *Zanetti*, 454 Mass. at 468.

The elements of armed assault with intent to murder are "that the defendant committed an assault, that he was armed with a dangerous weapon, and that he had the specific intent of murdering the victim in assaulting him." *Commonwealth* v. *Lopez*, 383 Mass. 497, 500 (1981). A rational jury could have found beyond a reasonable doubt that Britt assaulted Phillips with a dangerous weapon, with the intent to kill him, by shooting him multiple times. There was also sufficient evidence for a rational jury to conclude that the defendant knowingly participated with Britt in the crime. In particular, evidence showed that the defendant arrived at the scene with Britt, carrying his own loaded gun; attacked Phillips's companions by shooting them with that gun; and fled the scene with Britt in her car.

There also was sufficient evidence for the jury to infer that the defendant knew Britt had a firearm and shared her intent to kill Phillips. As a general matter, factors that may support an inference that a defendant knew his coventurer was armed include the defendant's actions and statements, the existence of a shared motive between the coventurers, and a prior relationship between the coventurers. See *Commonwealth* v. *Lee*, 460 Mass. 64, 70 (2011). The evidence in this case supports such an inference of knowledge and shared intent. The defendant and Britt were in a dating relationship and arrived together at the scene of the crime in Britt's car, both carrying loaded guns. The defendant testified that he retrieved his gun after Britt telephoned him to say she was coming to pick him up. He also testified that he had previously seen a nine millimeter gun in Britt's house. In

addition, the jury could find that the defendant and Britt had a shared motive to attack and even to kill Calhoun and his friends so that they would stop harassing Britt. The jury were not required to accept the defendant's testimony that he did not know Britt was armed until he returned to Britt's car. The defendant's claim of insufficient evidence to warrant his conviction of armed assault with intent to murder Phillips fails.

c. *Prosecutorial misconduct.* The defendant claims that the trial prosecutor posed improper questions to a witness and made improper arguments in his closing.

i. *Questioning of Phillips.* The prosecutor asked Phillips on direct examination, "Did . . . Calhoun tell you where he was going to meet . . . Britt to get his money?" Britt's counsel objected to the question; the objection was overruled. The prosecutor then asked, "Where did . . . Calhoun say he was going to meet . . . Britt to get his money?" and Phillips replied, "On Williams Street." Britt's counsel again objected and was overruled. Later, at sidebar, Britt's counsel explained that he had objected to the question as leading because there had been no evidence introduced of a planned meeting between Calhoun and Britt prior to the prosecutor's question. The judge did not change his ruling or give any curative instructions to the jury.

Phillips testified that Calhoun had said he was going to get his money from Britt, but Phillips did not use the word "meet." Although "[q]uestions asked in bad faith when there is no basis in the record are improper," *Commonwealth* v. *Silanskas*, 433 Mass. 678, 699 (2001), here there was an adequate basis in the record to support an inference that Calhoun intended to meet Britt to get his money. Before the prosecutor's question, the jury heard testimony from Hodges about the dispute between Britt and Calhoun over the insurance money and that Calhoun had been harassing Britt for the money. They heard Phillips testify that Calhoun had said that he was going to get his money from Britt and had asked Phillips to bring a gun. Further evidence that a meeting between the parties was planned included the fact that Phillips, Calhoun, and Turner had driven to 37 Williams Street without following anyone, yet had arrived within seconds of Britt and the defendant. The jury saw from the surveillance photographs that neither the defendant nor Britt had gotten

out of Britt's car until after Calhoun had parked his car. They also saw that Britt had walked directly toward Calhoun, rather than attempting to run away or avoid him.[10] The judge did not abuse his discretion by permitting the prosecutor to pose the question; there was no error.

ii. *The prosecutor's closing argument.* The defendant finds fault with four aspects of the prosecutor's closing. First, he claims that the prosecutor improperly argued facts not in evidence when he stated, "Does it feel more right to think that . . . Britt calls up [the defendant] and says, 'Hey, we're going to meet [Calhoun],' and they go over there and they've got loaded guns?" After both defense counsel objected to the prosecutor's implication that there was a conversation between the defendant and Britt before arriving at 37 Williams Street as speculation unsupported by the evidence, the judge offered to give a curative instruction.[11] He gave the following instruction: "At some point [the prosecutor] made argument about a likely conversation between [the defendant and Britt] prior to the incident before they went to Williams Street. The argument that there may have been communication between the two parties is fair argument. The content, or speculative nature of the content of that conversation is excluded from your consideration." While the prosecutor's remark was not proper in light of the actual trial evidence, the judge's curative instruction, delivered immediately after the prosecutor's closing argument, mitigated any potential prejudice. See *Commonwealth* v. *Silva*, 455 Mass. 503, 517-518 (2009).

Second, the defendant alleges that the prosecutor improperly argued that the defendant and Britt "concocted" their theory of self-defense after reviewing materials received in discovery. The prosecutor's statement referred to the fact that in a letter Britt wrote to her cousin in January, 2008, approximately six months after the killings, she accused Hodges of framing her,

---

[10]Furthermore, the prosecutor's question asked only about Calhoun's plan to meet with Britt. That Calhoun may have intended to meet with Britt does not necessarily signify a prior agreement on the part of Britt or the defendant that there would be a meeting.

[11]The defendant's attorney stated, "That's fine," when the judge said that he would give a curative instruction, and registered no objection to the specific instruction the judge provided.

but did not mention self-defense. The prosecutor told the jury, "Nothing in that letter about self-defense. All of a sudden [Hodges] is a rat. But now two years later, because of the mounting evidence that that meticulous police investigation did, [the defendant and Britt] come before you and ask you to buy into their self-defense. The evidence doesn't support it." Britt's attorney objected, but the judge declined to give a curative instruction.

The prosecutor's argument was merely a comment on the fact that statements made by Britt before trial arguably conflicted with the claim of self-defense. He did not state that the defendant and Britt had reviewed discovery or had listened to trial testimony and then proposed a theory of self-defense. Contrast *Commonwealth* v. *Person*, 400 Mass. 136, 142 (1987) (reversing conviction because prosecutor's closing implied, inter alia, that defendant waited to hear Commonwealth's evidence at trial before testifying to his version of events); *Commonwealth* v. *Ewing*, 67 Mass. App. Ct. 531, 542, 546 (2006), *S.C.*, 449 Mass. 1035 (2007) (reversing conviction because, among other things, prosecutor's cross-examination and closing implied that defendant had used access to discovery materials to develop theory of defense).

However, the prosecutor did err in implying that the statements in the letter to Britt's cousin could be attributed to the defendant because the letter was only admissible against Britt, its author. The judge had instructed the jury on this point when the letter was admitted. Although the judge did not repeat the instruction that the letter was not admissible against the defendant immediately following the prosecutor's closing, he did so very soon thereafter as part of his general charge.[12] We determine that there was no substantial likelihood of a miscarriage of justice because the jury were made aware, both before and after the prosecutor's statement, that nothing in the letter could be

_____

[12]As he began his final instructions, the judge told the jury: "Any testimony that was admitted for a limited purpose may only be used for that limited purpose. During trial you heard evidence regarding a letter written by [Britt] to Lisa White. That evidence is admissible solely in the case against [Britt]. It is not evidence in the case against [the defendant], and you are instructed to disregard that evidence when you consider whether the Commonwealth has proven its case against [the defendant]."

used as evidence against the defendant. Furthermore, the prosecutor's brief reference to the fact that Britt did not explicitly say she had acted in self-defense in a letter written some six months after the shootings was unlikely to have much impact on the jury's deliberations, given that the defendant himself testified at length about why and how he had acted to defend himself and Britt.

Third, the defendant contends that the prosecutor mischaracterized the eight-second gap in the surveillance photographs, and by doing so improperly suggested that the defendant and Britt had the burden to prove self-defense and had failed to provide enough evidence to do so. The prosecutor reviewed the surveillance photographs of the incident for the jury, arguing that in each of them, the victims were not doing anything that would threaten the defendant and Britt. He also argued it could be inferred that nothing could have happened during a gap of eight seconds that would permit the use of deadly force in self-defense or defense of another. However, the prosecutor was careful to describe repeatedly the Commonwealth's burden of proof in proper terms: "[I]f the evidence shows beyond a reasonable doubt that there was no imminent threat of death or serious bodily harm, then self-defense is not applicable, the Commonwealth has disproved it beyond a reasonable doubt. . . . Another way the Commonwealth disproves the right of self-defense in this case is [by showing that the defendant and Britt did not use all reasonable means to avoid physical combat]." The prosecutor argued only the fair inferences from the evidence and did not misstate the burden of proof.

Finally, the defendant claims that the prosecutor mischaracterized the defendant's own testimony in order to attack his credibility. We disagree. The prosecutor did not distort the defendant's testimony; he merely contrasted that testimony with other physical and medical evidence in the case to indicate areas where the defendant's testimony seemed implausible or contradictory.

The prosecutor's closing does not require reversal of the defendant's convictions.

d. *Review under G. L. c. 278, § 33E.* We have reviewed carefully the record of this case and all the evidence. We find no basis to exercise our authority under G. L. c. 278, § 33E, to set

aside or reduce the defendant's conviction of murder in the first degree of Calhoun.

3. *Conclusion.* On the indictment charging armed assault with intent to murder, the judgment is reversed, the verdict is set aside, and the indictment is remanded to the Superior Court for further proceedings. All of the remaining judgments of conviction are affirmed.

*So ordered.*