## COMMONWEALTH vs. TONIEKA BRITT.

Suffolk. January 11, 2013. - May 10, 2013.

Present: SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Homicide. Armed Assault with Intent to Murder. Firearms. Intent. Evidence,*
*Hearsay, Intent, Self-defense, Joint venturer, Argument by prosecutor.*
*Constitutional Law, Assistance of counsel. Practice, Criminal, Hearsay,*
*Argument by prosecutor, Instructions to jury, Assistance of counsel, Capital*
*case. Self-Defense. Joint Enterprise.*

A Superior Court judge did not err in denying a murder defendant's motion
for a new trial, where there was no error in the admission of the victim's
statement to show he had an intention to meet the defendant to collect
money he believed the defendant owed him and that his intention was, in
fact, carried out [89-92]; where the prosecutor did not misstate the evidence
in his closing argument [92-93]; and where counsel was not ineffective in
failing to present better evidence concerning the defendant's choice of a
parking space [93-95].

At a murder trial, the judge's instruction to the jury on excessive use of force
did not give the jury the erroneous impression that they could convict the
defendant of murder even if the Commonwealth proved excessive force in
self-defense, where the substance of the instruction, considered as a whole,
left no doubt that murder was not a possible verdict if the defendant used
excessive force in defending herself. [95-96]

This court concluded that juries should not be instructed that the Commonwealth
must prove that a joint venturer knew that the principal was armed to return
a conviction of murder based on deliberate premeditation [99-101]; accord-
ingly, at a criminal trial, no substantial likelihood of a miscarriage of justice
arose from the omission of an instruction that the Commonwealth had to
prove the defendant knew her coconspirator was armed in order to convict
her of murder with deliberate premeditation on a theory of joint venture,
where the judge instructed the jury that, regarding the crimes of armed as-
sault with intent to murder and unlawful possession of a firearm, the Com-
monwealth had to prove beyond a reasonable doubt that the defendant pos-
sessed a firearm, and the jury convicted the defendant of those offenses; and
where there was no dispute that the defendant knew she had a gun [96-99].

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 7, 2008.

The cases were tried before *Frank M. Gaziano*, J., and a
motion for a new trial was considered by him.

*Joseph A. Hanofee* for the defendant.

*Teresa K. Anderson,* Assistant District Attorney (*David J. Fredette & Julie Sunkle Higgins,* Assistant District Attorneys, with her) for the Commonwealth.

SPINA, J. The defendant was convicted of the murder of Jessie Calhoun with deliberate premeditation and the murder of Robert Turner with deliberate premeditation and extreme atrocity or cruelty. She also was convicted of armed assault with intent to murder Antoine Phillips and unlawful possession of a firearm.[1] While her appeal was pending in this court she filed a motion for a new trial that we remanded to the Superior Court. That motion was denied without a hearing. Her appeal from the denial of the motion for a new trial has been consolidated with her direct appeal. The defendant asserts error in the denial of her motion for a new trial on the grounds that the judge erred in admitting a hearsay statement of a deceased victim; the prosecutor misstated the evidence in his closing argument; and her trial counsel failed effectively to develop an innocent explanation why the defendant parked her motor vehicle where she did and, thus, provided ineffective assistance of counsel. She also challenges the judge's jury instruction on the excessive use of force in self-defense, and refusal to instruct the jury that the Commonwealth had to prove that the defendant knew that her codefendant was armed with the murder weapon to convict her of the deliberately premeditated murder of Calhoun on a theory of joint venture. We affirm the convictions and the denial of the defendant's motion for a new trial, and decline to exercise our power under G. L. c. 278, § 33E.

1. *Background.* The facts of this case were set forth in detail in *Commonwealth* v. *Bolling,* 462 Mass. 440, 442-445 (2012) (*Bolling*). Therefore, we recount only a few key facts as the jury could have found them, and reserve additional facts for discussion of particular issues.

The defendant and Calhoun, who previously had been in a

---

[1]The defendant was tried with Alexander Bolling, who was convicted of murder in the first degree of Jessie Calhoun and murder in the second degree of Robert Turner. We considered Bolling's appeal separately and affirmed his murder convictions. *Commonwealth* v. *Bolling,* 462 Mass. 440, 458 (2012) (*Bolling*).

dating relationship, were involved in a dispute concerning the rightful ownership of insurance settlement proceeds that the defendant received after an automobile accident. According to the defendant, this led to several encounters during which Calhoun harassed and threatened the defendant, and an incident in which Calhoun pulled out clumps of the defendant's hair. At approximately 2 A.M. on August 2, 2007, the defendant was driving a borrowed, silver Volkswagon Jetta automobile, accompanied by Alexander Bolling, her new boy friend. Both the defendant and Bolling were armed. On her way home, the defendant saw Calhoun driving in his Pontiac automobile. She drove to her apartment building on Williams Street and parked across the street. Several seconds later, Calhoun drove down the street and parked across from the defendant, on the same side of the street as her apartment building. Turner and Phillips were in Calhoun's car. Turner was carrying the gun that Calhoun asked Phillips to bring because Calhoun was planning to collect the insurance money.

Approximately thirty seconds after Calhoun's car arrived, the defendant got out of her car and walked toward Calhoun. There was no yelling, screaming, or physical contact. Bolling then walked up to the group, and shot and killed Calhoun with a single gunshot to the head. Next, both the defendant and Bolling shot and killed Turner: the defendant shot Turner in the head and back, and Bolling shot Turner in the torso and arm. The defendant then shot Phillips several times. Phillips survived. Thereafter, the defendant and Bolling drove away.[2] The entire incident transpired in approximately eighty seconds. At trial, the defendants claimed self-defense and defense of another, based on the defendant's history of past violence with Calhoun. Their theory of the case was that they did not expect Calhoun that night, and that they only shot the victims out of fear that the victims otherwise would have shot them first.

2. *Motion for a new trial.* Although the defendant frames her arguments in terms of whether the Commonwealth met its burden

---

[2] A surveillance camera captured images of the crime scene at eight-second intervals. Of relevance to this appeal, see *infra*, the images established that the defendant parked across the street from her residence and that Calhoun parked in front of her apartment building.

of proof of deliberate premeditation as concerns Calhoun's murder, we also consider them as concerns her conviction of Turner's murder. We review the defendant's motion for a new trial together with her direct appeal from convictions of murder in the first degree pursuant to G. L. c. 278, § 33E, which is a standard favorable to her. The threshold inquiry is whether the denial of the motion was an abuse of discretion or based on an error of law. See *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). If so, we consider whether such error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999), citing *Commonwealth* v. *Mitchell*, 428 Mass. 852, 854 (1999). "The decision to allow a motion for a new trial lies within the sound discretion of the trial judge." *Commonwealth* v. *Hung Tan Vo*, 427 Mass. 464, 467 (1998), citing *Commonwealth* v. *Figueroa*, 422 Mass. 72, 77 (1996).[3]

a. *Admission of a victim's statement.* The defendant argues that it was error to admit a hearsay statement of Calhoun because the statement not only showed *Calhoun*'s intent to meet the defendant on the night of the shooting, but also impermissibly implicated *her* mutual intent to meet Calhoun. It is the defendant's position that the statement impermissibly invited the jury to conclude that she went to a preplanned meeting with premeditated murderous intent. The challenged statement was elicited in question-and-answer form. The prosecutor asked Phillips, who testified for the prosecution: "Did . . . Calhoun tell you where he was going to *meet* [the defendant] to get his money?" (emphasis supplied). Phillips responded, "Yes." The prosecutor then asked, "Where did . . . Calhoun say he was going to *meet* [the defendant] to get his money?" (emphasis supplied). Phillips replied, "On Williams Street."[4] Trial counsel objected to these questions, but was overruled. At a later sidebar conference, trial counsel explained that he objected to the leading nature of the prosecutor's questions, and specifically

---

[3] The trial judge also considered the defendant's motion for a new trial.

[4] We focus on this language because it is the focus of the defendant's argument to this court. We likewise consider the propriety of admitting Calhoun's statement that he was "going to get [his] money from that fat bitch" because the motion judge gave it considerable review. Like the motion judge, we conclude that this statement was admissible pursuant to Mass. G. Evid. § 803(3)(B)(ii) (2012), for the same reasons we articulate herein.

argued that the word "meet" implied that both the defendant and Calhoun agreed to a preplanned meeting.[5] The judge neither changed his ruling nor gave a curative instruction concerning this exchange.

"Statements, not too remote in time, which indicate an intention to engage in particular conduct, are admissible to prove that the conduct was, in fact, put in effect." *Commonwealth* v. *Ortiz*, 463 Mass. 402, 409 (2012), quoting *Commonwealth* v. *Avila*, 454 Mass. 744, 767 (2009). See Mass. G. Evid. § 803(3)(B)(ii) (2012). The judge did not abuse his discretion in determining that Calhoun's statement was "admissible to prove that Calhoun had an intention to meet [the defendant] on Williams Street to collect his money and that his intention was, in fact, carried out." See *Commonwealth* v. *Ortiz*, *supra* at 405, 409-410 (deceased victim's out-of-court statement falls into "present intent to act" hearsay exception). As the judge properly noted, Calhoun's intent was material to show that the confrontation on Williams Street was no chance encounter. The evidence was not admitted in error.

Moreover, as we said in *Bolling*, *supra* at 455 n.10, that Calhoun intended to meet with Britt does not necessarily mean that Britt previously agreed to a meeting. See *Commonwealth* v. *Fernandes*, 427 Mass. 90, 95 (1998) (declarant's state of mind not imputed to defendant). Calhoun could have used the word "meet" in the sense that he intended to see or to find the defendant at her apartment. See *Commonwealth* v. *Ortiz*, *supra* at 409 (victim's statement that she would "pick up" defendant did not implicate defendant's intent). People speaking colloquially do not use words only in accordance with their dictionary definitions.

To the extent the statement may have communicated information about the defendant's state of mind, it was cumulative of other evidence that the defendant and Calhoun did, in fact, have

[5]The defendant also objects to the form of the prosecutor's questions. This argument has no merit. In *Bolling*, *supra* at 454, we determined that the prosecutor's questions were not improper because "there was an adequate basis in the record to support an inference that Calhoun intended to meet [the defendant] to get his money." The judge did not abuse his discretion in overruling the objection to the form of the question. See *Commonwealth* v. *Mitchell*, 367 Mass. 419, 420 (1975).

a preplanned meeting outside the defendant's apartment on the night of the shootings. See *Commonwealth* v. *Mendes,* 441 Mass. 459, 466 (2004). As we recounted in *Bolling, supra* at 446, 454, Phillips testified that Calhoun had not followed the defendant to Williams Street, and yet, the cars arrived within seconds of each other. Moreover, surveillance photographs indicated that the defendant and Bolling waited in the car outside the apartment building until Calhoun, Turner, and Phillips arrived, and that the defendant then got out of her car and approached Calhoun directly, making no effort to avoid him. *Id.* at 454-455. Because there was an ample basis from which the jury could have inferred that a meeting had been prearranged, the admission of the statement did not create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Mendes, supra.*

b. *Misstated evidence.* The defendant argues that the prosecutor misstated the evidence in his closing argument by insinuating to the jury that, on the night of the shootings, the defendant bypassed legal and available parking spaces closer to her apartment building in favor of parking across the street. It is the defendant's view that such alleged misstatements prejudicially steered the jury into believing that she could have lawfully parked elsewhere, but that she chose to park across the street to facilitate a quick getaway after committing deliberately premeditated murder.

The portion of the prosecutor's closing argument to which the defendant objects is as follows:

> "What else do you notice about this picture? That gray Jetta parks across the street. Now defense counsel wants you to believe that [the space in front of the defendant's apartment] wasn't a parking spot. Defense counsel wants you to believe that this white Pontiac was blocking that entire driveway. But again, ladies and gentlemen, look at the evidence. . . . Exhibit Number 85 shows more than a full parking space, right in front of [the defendant's apartment]. That silver Jetta doesn't go in the parking lot. That silver Jetta doesn't park in the closest space to [the defendant's apartment]. . . . It parks across the street and, I would suggest, ladies and gentlemen, across the street where there are no cars in front of it, across the street so that's an easy getaway."

Although a prosecutor is entitled to argue the evidence and to suggest inferences that fairly may be drawn therefrom to the jury, the prosecutor may not misstate the evidence. See *Commonwealth* v. *Young*, 461 Mass. 198, 206 (2012). As did the judge, we conclude that the prosecutor did not misstate the evidence. See *id*. The evidence presented at trial, including photographs from a surveillance camera and Bolling's and Phillips's testimony, established that the defendant parked across the street from her residence, and not in the space in front of her apartment building or in the adjacent parking lot. In his closing argument, the prosecutor simply repeated these undisputed facts, and made the suggestion, which finds support in the evidence, that there was sufficient space for the defendant to have physically parked elsewhere. See *Commonwealth* v. *Good*, 409 Mass. 612, 625-626 (1991). At no point did he claim that there was a "legal" parking space in front of the defendant's apartment building. Furthermore — given the voluminous evidence of deliberate premeditation, which we discuss later — it was proper for the prosecutor to ask the jury to draw the reasonable inference that the defendant's primary concern was not with finding legal, long-term parking, but with making a speedy getaway following deliberately premeditated murder. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 452-453 (1993). Thus, it was for the jury ultimately to determine the significance of the defendant's decision to park where she did. See *Commonwealth* v. *Good*, *supra* at 626. The prosecutor did not misstate the evidence.

c. *Ineffective assistance of counsel.* The defendant next claims that her trial counsel was ineffective for failing to present better evidence of the unavailability of other parking options to counter the prosecutor's suggestion that the defendant parked in the space best suited to make a quick getaway after committing premeditated murder. We review claims of ineffective assistance of counsel raised in a motion for a new trial and coupled with a direct appeal under G. L. c. 278, § 33E, to determine whether counsel's conduct or omission "was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). We agree with the judge that this claim of ineffective assistance of counsel lacks merit. See *Commonwealth* v. *DeVincent*, 421 Mass. 64, 69 (1995) (trial judge's favorable evaluation of counsel's performance accorded substantial

deference). As the judge observed, trial counsel "was aware of the factual issue [concerning the availability of other parking places] and effectively presented it to the jury." While on a view of the crime scene with the jury, trial counsel pointed to the yellow portion of the curbstone in front of the defendant's apartment building and asked the jury to "please notice the curb and the color of the curbstone." He also argued in closing that the defendant "parks in an available spot. The area across the street is not a legal parking spot. You saw the curbstone when we went out there on a view. It's not a legal parking spot." In so doing, he effectively communicated to the jury the defense theory that the defendant innocently parked across the street because that was the only legal and available option. No additional evidence was necessary. Moreover, the evidence the defendant claims that trial counsel should have offered, which she presented in support of her motion for a new trial, is merely cumulative of the evidence offered at trial.[6] The decision not to raise cumulative evidence merely for quantity's sake does not constitute ineffective assistance of counsel. See *Commonwealth* v. *Buckman*, 461 Mass. 24, 42 (2011), cert. denied, 132 S. Ct. 2781 (2012); *Commonwealth* v. *Drew*, 447 Mass. 635, 650 (2006), cert. denied, 550 U.S. 943 (2007).

The defendant also claims that, although there was evidence that the defendant was driving a borrowed car on the night of the shooting, trial counsel erred in failing to present evidence that the borrowed car did not have a resident parking sticker and that, therefore, the defendant could not park in the lot adjacent to her apartment building.[7] Although the judge did not address this contention in his order denying the defendant's motion for a new trial, we nevertheless conclude that this omission

---

[6]In support of her motion for a new trial, the defendant presented additional material (photographs, affidavits, traffic regulations) to emphasize the parking prohibitions. She also submitted an affidavit in which she attested that the borrowed car she drove on the night of the shooting did not have a resident parking sticker.

[7]Defense counsel did argue in closing that the defendant did not park in the parking lot adjacent to her apartment building because she was driving a borrowed car that did not have a resident parking sticker. However, the prosecution objected, and the judge sustained the objection and ordered that the statement be struck from the record, presumably because it was not supported by the evidence.

by counsel did not create a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999). As we discuss next, there was sufficient evidence of premeditated murder irrespective of the evidence concerning the defendant's choice of a parking space. See *Bolling, supra* at 446. Therefore, even if trial counsel had argued that the defendant could not have parked in the lot because the borrowed car did not have the proper parking sticker, such evidence was not "likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright, supra.* We conclude that counsel was not ineffective.

Not only was there no error concerning any of the defendant's claims, but, as we stated in *Bolling, supra*, there was sufficient evidence to support the jury's finding of deliberately premeditated murder. See, e.g., *Commonwealth* v. *Kirwan*, 448 Mass. 304, 308 (2007). The defendants carried loaded firearms, see *Commonwealth* v. *Ruci*, 409 Mass. 94, 96-97 (1991), arrived just seconds before the victims, and approached the victims directly. See *Bolling, supra.* The defendants commenced shooting almost immediately, hitting at least one victim less than sixty seconds after Calhoun's car arrived. Moreover, the character of the execution-style shootings reveals deliberate premeditation: the defendant shot Turner and Phillips repeatedly, at point blank range, and with remarkable accuracy. *Id.* at 443. The fact that the defendant shot Turner twice, including once in the head, is sufficient evidence of deliberate premeditation.[8] See *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 63-64 (1989). See also *Commonwealth* v. *Johnson*, 435 Mass. 113, 119 (2001).

For these additional reasons, there was no error or abuse of discretion in the denial of the defendant's motion for a new trial. See *Commonwealth* v. *Leng*, 463 Mass. 779, 789 (2012).

3. *Instruction on excessive use of force.* The defendant argues that the judge's instruction on the excessive use of force in self-defense, to which she did not object at trial, gave the jury the erroneous impression that they still could convict the defendant of murder even if the Commonwealth proved excessive force in self-defense. In relevant part, the judge instructed the jury that "[t]he law does not permit retaliation or revenge. The proper

---

[8]The defendant does not contest the sufficiency of the evidence that she murdered Turner with deliberate premeditation and extreme atrocity or cruelty.

exercise of self-defense arises from necessity and ends when the necessity ends." On the issue of the excessive use of force in self-defense or defense of another, the judge instructed:

> "If the Commonwealth fails to prove beyond a reasonable doubt the absence of self-defense or defense of another, your verdict must not be guilty with respect to the crimes of murder or voluntary manslaughter. If, however, the Commonwealth does prove excessive force in an effort to defend one's self or another, you *would be justified* in finding the defendant guilty of voluntary manslaughter" (emphasis supplied).

Specifically, the defendant challenges the use of the phrase "would be justified," instead of the word "must." See Model Jury Instructions on Homicide 30 (1999). She argues that the use of such language is akin to the error we identified in *Commonwealth* v. *Santos*, 454 Mass. 770, 774-775 (2009) (*Santos*), where the judge first gave the erroneous impression that excessive force completely negates the defense of self-defense, and then instructed the jury that "if the means used were unreasonable and clearly excessive in light of the existing circumstances . . . then the defendant *may* be found guilty of *murder*" (emphases supplied). As we explained in *Bolling, supra* at 448-449, the instruction in the present case is unlike the instruction in *Santos*. The gravamen of the error in *Santos, supra* at 776, was that the jury was "given the option of considering that a murder ha[d] been committed." Here, the substance of the judge's instruction, considered as a whole, left no doubt that murder was not a possible verdict if the defendant used excessive force in defending herself. See *Bolling, supra*. Considering the instruction in its entirety, there was no error. See *Commonwealth* v. *Oliveira*, 445 Mass. 837, 844 (2006); *Commonwealth* v. *Torres*, 420 Mass. 479, 484-485 (1995).

4. *Failure to instruct on knowledge of a weapon.* Although she did not request it, the defendant now claims that the judge erred in failing to instruct the jury that the Commonwealth had to prove she knew Bolling was armed in order to convict her of the murder of Calhoun with deliberate premeditation. Of relevance to this claim are the undisputed facts that Bolling

alone shot and killed Calhoun, and that the defendant — who was also armed — did not shoot Calhoun. Thus, the Commonwealth prosecuted the defendant for Calhoun's murder on a theory of joint venture liability. The judge instructed the jury on joint venture in accordance with the standard articulated in *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466 (2009), and on the elements of murder in the first degree with deliberate premeditation. He did not instruct the jury that, to convict the defendant as a joint venturer in deliberately premeditated murder, they would have to find that the defendant participated in Calhoun's murder with knowledge that Bolling had a gun. See *id.* at 455 & n.8. He did, however, instruct the jury that, to prove armed assault with intent to murder Phillips, the Commonwealth had to prove that the defendant committed the alleged assault by means of a dangerous weapon, here, a firearm. He also instructed the jury that, to prove the defendant illegally possessed a firearm, she had to possess it knowingly.

We have stated that "[u]nder a theory of joint venture premeditated murder during which another person carried and used [the murder weapon], the Commonwealth must 'establish beyond a reasonable doubt that the defendant knew [the other person] had [the murder weapon] with him.' " *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995), quoting *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 n.2 (1992). Accord *Commonwealth* v. *Phillips*, 452 Mass. 617, 631-632 (2008). See *Commonwealth* v. *Zanetti*, *supra*. The applicable legal principle is broader than the quoted sentence suggests.

In *Commonwealth* v. *Green*, *supra* at 779-780, there were only two actors in the alleged joint venture. Therefore, we said, if the defendant was not the shooter, he had to know the other actor, sometimes referred to as the "principal," had a gun at the time the victim was shot. See *id.* at 779. In *Commonwealth* v. *Phillips*, *supra* at 619-620, 621, there were three actors, one of whom was unknown and remained at large. We said that, as to the crime of felony-murder on a theory of joint venture, the judge correctly instructed the jury when he said that "[t]he Commonwealth must prove beyond a reasonable doubt that the defendant knew that *one or more of his joint venturers had a weapon*" (emphasis added). *Id.* at 631. We went on to say that

the failure to give a similar instruction as to deliberate premeditation was error, but that it could not have created a substantial likelihood of a miscarriage of justice because "[t]he jury necessarily found that the defendants [the two who were tried] knew of the existence of a weapon, or weapons, because they were convicted of armed robbery," the predicate felony of the felony-murder convictions. *Id.* at 631-632. In *Commonwealth v. Zanetti, supra* at 450, 456, there were four people in a car from which a fatal bullet was fired, and the evidence indicated that the shooter, most likely, was either Zanetti or one Lopez. We said the joint venture instruction as it related to deliberately premeditated murder was deficient because it "failed to inform the jury of the requirement that the Commonwealth prove the defendant's knowledge that *someone* in [the] car had a gun" (emphasis supplied). *Id.* at 455 n.8. Thus, correctly stated, the principle of joint venture as it relates to deliberately premeditated murder does not require the Commonwealth to prove that the defendant knew the actual killer had a weapon. Rather, it requires the Commonwealth to prove that the defendant knew that one or more of the participants in the joint venture had a weapon.

Applying this principle to the instant case, we conclude that the omission of an instruction on knowledge of a weapon as to deliberately premeditated murder on a joint venture theory did not create a substantial likelihood of a miscarriage of justice. The jury necessarily found that the defendant knew that someone participating in the joint venture had a weapon, even if that weapon was in the defendant's own possession.[9] See *Commonwealth v. Phillips, supra* at 631-632. The judge instructed the jury that, regarding the crimes of armed assault with intent to murder and unlawful possession of a firearm, the Commonwealth had to prove beyond a reasonable doubt that the defendant possessed a firearm. The jury convicted the defendant

[9]The Model Jury Instructions on Homicide state that, "[w]here an element of an offense is that a person who committed the crime possessed, carried, or used a weapon, the Commonwealth must prove beyond a reasonable doubt *either that the defendant himself possessed a weapon* or that the defendant knew that a person with whom he participated in the commission of the crime was armed with a weapon," to sustain its burden of liability on a theory of joint venture (emphasis supplied). Model Jury Instructions on Homicide 16 (2013), citing *Commonwealth v. Phillips,* 452 Mass. 617, 631 (2008).

of those offenses. Moreover, there was no dispute that the defendant knew she had a gun: she used it to shoot Turner and Phillips. The defense was not that she did not have a gun. The defense was self-defense. Therefore, the omission of an instruction on knowledge of a weapon on the joint venture theory of deliberately premeditated murder did not create a substantial likelihood of a miscarriage of justice.[10] See *id.*

Before leaving the subject of deliberately premeditated murder on a joint venture theory, we address a conflict in our case law that has come to our attention. We have acknowledged a line of cases that stands for the proposition that a conviction for deliberately premeditated murder on a theory of joint venture requires proof that the joint venturer had knowledge that at least one member of the joint venture possessed a weapon.[11] This line of cases, cited above, beginning with *Commonwealth* v. *Lydon*, 413 Mass. 309 (1992), is based on a misapplication of the principle that knowledge of a weapon is an element of the Commonwealth's proof when a defendant is prosecuted on a theory of joint venture where an element of the predicate offense is use or possession of a dangerous weapon. See *Commonwealth* v. *Melendez*, 427 Mass. 214, 215-216 (1998) (requiring jury instruction on element of joint venturer's knowledge of weapon where principal's crime involves use of weapon); *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 (1994) (same). See also *Commonwealth* v. *Patterson*, 432 Mass. 767, 773 (2000), *S.C.*, 445 Mass. 626 (2005) (sufficient evidence of joint venture for crime with possession as element requires knowledge that principal had weapon); *Commonwealth* v. *Ellis*, 432 Mass. 746,

[10]In *Bolling*, *supra* at 452, we concluded that, because the judge failed to instruct the jury on knowledge of a weapon, Bolling's conviction of armed assault with intent to murder Phillips on a theory of joint venture required reversal. We no longer follow this reasoning. Because the jury convicted Bolling of unlawful possession of a firearm, *id.* at 441, the omission of the instruction on knowledge of a weapon could not have created a substantial risk of a miscarriage of justice in his conviction of armed assault with intent to murder Phillips on a joint venture theory. Of course, our holding that Bolling have a new trial on that indictment is unaffected by our decision today.

[11]See *Commonwealth* v. *Zanetti*, 454 Mass. 449, 455, 455 n.8 (2009), quoting *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995); *Commonwealth* v. *Phillips*, 452 Mass. 617, 631 (2008); *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 n.2 (1992).

762 (2000) (same). It was introduced as an element of deliberately premeditated murder on a joint venture theory in a footnote in *Commonwealth* v. *Lydon*, *supra* at 312 n.2, without analysis, and based on a misunderstanding of the facts in *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988). It also directly conflicts with another line of cases. See *Commonwealth* v. *Pov Hour*, 446 Mass. 35, 42 (2006), and cases cited. We now hold that the *Lydon* line of cases must be overruled to the extent that it requires proof of knowledge of a weapon for deliberately premeditated murder on a joint venture theory.

The Commonwealth should bear the burden of proving only that a joint venturer had knowledge that a member of the joint venture had a weapon where the conviction on a joint venture theory is for a crime that has use or possession of a weapon as an element. See *Commonwealth* v. *Patterson*, *supra*; *Commonwealth* v. *Ellis*, *supra*. See also *Commonwealth* v. *Melendez*, *supra*; *Commonwealth* v. *Claudio*, *supra*. The proper, indeed the traditional, application of the requirement of knowledge of a weapon in the context of murder in the first degree on a joint venture theory applies only where the conviction is for felony-murder and the underlying felony has as one of its elements the use or possession of a weapon. See, e.g., *Commonwealth* v. *Melendez*, *supra*; *Commonwealth* v. *Claudio*, *supra*, and cases cited. See also Model Jury Instructions on Homicide 63 (1999) (felony-murder on a theory of joint venture and knowledge of a weapon). Neither possession nor use of a firearm is an element of murder in the first degree based on deliberate premeditation. *Id.* at 4, 7.[12] Therefore, in cases tried hereafter, juries should not be instructed that the Commonwealth must prove that a joint venturer knew that the principal was armed to return a conviction of murder based on deliberate premeditation. See *Commonwealth* v. *Pov Hour*, *supra*; *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 546-547, 555 (1990). It is enough that the Commonwealth, proceeding against a defendant on a joint venture theory, prove beyond a reasonable doubt that "the defendant knowingly participated in the commission of the crime charged, and that the

---

[12]Nor is it an element of murder in the first degree based on extreme atrocity or cruelty. See *Commonwealth* v. *Pov Hour*, 446 Mass. 35, 42 (2006), and cases cited.

defendant had or shared the required criminal intent." *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467 (2009).

*5. Relief under G. L. c. 278, § 33E.* We reviewed the record in its entirety and discern no basis for reducing the degree of guilt or ordering a new trial.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*