NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11691


COMMONWEALTH  vs.  EDWARD COOLEY.



Hampden.      March 10, 2017. - July 13, 2017.

Present:  Gants, C.J., Gaziano, Lowy, & Budd, JJ.


Homicide.  Robbery.  Firearms.  Joint Enterprise.  Evidence,
    Joint venturer, Exculpatory.  Practice, Criminal, New
    trial, Capital case.




Indictments found and returned in the Superior Court
Department on June 29, 2010.

The cases were tried before Mary-Lou Rup, J., and a motion
for a new trial, filed on October 24, 2011, was heard by her.


Stephen Paul Maidman for the defendant.
David L. Sheppard-Brick, Assistant District Attorney, for
the Commonwealth.


BUDD, J.  In the early morning hours of March 20, 2010,

Nicholas Hiller was shot and killed in Springfield while sitting

in his motor vehicle.  The defendant, Edward Cooley, was

indicted and ultimately convicted by a jury of murder in the

first degree on a theory of felony-murder,[1] as well as unlawful possession of a firearm and wilful interference with a criminal investigation.  In this consolidated appeal, the defendant claims that the judge erred in denying his motion for a required finding of not guilty of murder in the first degree and unlawful possession of a firearm.  The defendant further argues that the judge improperly denied his motion for a new trial, which was based on the Commonwealth's failure to disclose allegedly exculpatory evidence that had been specifically requested.  We affirm the defendant's convictions and the judge's order denying his motion for a new trial.  After a review of the entire record, we also decline to reduce or set aside the defendant's murder conviction under G. L. c. 278, § 33E.

1.  Background.  We summarize the facts in the light most favorable to the Commonwealth, reserving certain details for discussion of specific issues.  At approximately 12:20 A.M. on March 20, 2010, in a Springfield neighborhood, a witness heard two shots fired.  She looked out her window and saw two men speaking in a "panicking way"; the men then ran in opposite directions.  Other witnesses also heard the gunshots, soon followed by the sound of a motor vehicle crashing.  The victim's motor vehicle had crashed through a fence, struck another vehicle, and come to a stop in the yard of one of the witnesses.

[1] The predicate offense was armed robbery.

The victim was slumped over in the driver's seat and bleeding heavily.

As the witnesses approached the vehicle, the defendant, wearing a leather jacket, ran up yelling, "It's my god-brother," and "Don't call the cops[;] the guy[']s got weed on him." He climbed into the vehicle, pulled the victim slightly toward him while patting him down, and took the victim's cellular telephone. He also took a bag from behind the victim's seat, where police later found two bags containing marijuana. After getting out of the motor vehicle, the defendant told the witnesses to telephone the police and left the scene. First responders found that the victim sustained injuries consistent with a bullet traveling through his right arm and into his chest. He was pronounced dead a short time later at a hospital.

Police were directed to the defendant, who had since returned to the area (without his leather jacket). The defendant was interviewed at the scene and twice more at the police station. As investigators uncovered further evidence, the defendant changed portions of his statement. For example, after first denying it, he eventually admitted that the leather jacket, found hidden a short distance away from where the victim and his vehicle had crashed, was his. The jacket tested positive for gunshot primer residue on the cuffs, indicating that the jacket may have been within three feet of a gun when it

was fired. The jacket also was stained with blood that matched the major deoxyribonucleic acid profile of the victim. The defendant admitted to taking the victim's cellular telephone from the motor vehicle after the crash only after police recovered it from a motor vehicle belonging to the defendant's girl friend.

Other portions of the defendant's statements to police were proved false at trial. For example, the defendant had stated that he happened to meet the victim at a pharmacy store hours before the shooting, but surveillance video recordings from inside and outside the store showed the victim there alone. The defendant's claim that he had been on the telephone with the victim at the time of the shooting was belied by telephone records that showed that there were no telephone calls between the defendant and the victim at any point prior to the shooting.

The telephone records also showed that, although there were no calls between the defendant and the victim, both were in touch with a third party, who had a telephone number ending in 7471, in the hours before the killing. There were numerous calls between the victim's number and the 7471 number, culminating with a call made minutes before the shooting. In addition, the records indicated that there were calls during the night prior to the shooting between the defendant's number and the 7471 number until 9:42 P.M. Another call was made from the

defendant's number to the 7471 number soon after the defendant finished giving his second statement at the police station.

2. Sufficiency of the evidence. At trial, the Commonwealth's theory was that the defendant and an unidentified person were involved in a joint venture to rob the victim, that either one or the other shot the victim during the course of the robbery, and that the defendant completed the robbery after the shooting at the site of the crash.

The defendant argues that the evidence was insufficient to convict him as a joint venturer in an armed robbery that resulted in the victim's death.[2] "To succeed in a claim for insufficient evidence, [the defendant] must show that, in viewing the evidence in the light most favorable to the Commonwealth, no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." Commonwealth v. Mendez, 476 Mass. 512, 523 (2017), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).

Applying that standard here, to find the defendant guilty of felony-murder with armed robbery as the predicate offense, a rational juror must have been able to find beyond a reasonable

---

[2] The defendant also asserts insufficient evidence was presented to prove unlawful possession of a firearm. Because one of the elements of armed robbery is possession of a dangerous weapon, the discussion of that charge is included in our analysis of the sufficiency of proof of the armed robbery, infra.

doubt that the defendant participated in an armed robbery and that the victim's death occurred in the commission or attempted commission of that robbery. See Commonwealth v. Williams, 475 Mass. 705, 710 (2016); Commonwealth v. Zanetti, 454 Mass. 449, 467-468 (2009). The participants need only have had the intent to commit the underlying felony, not necessarily the intent to commit murder. See Commonwealth v. Hanright, 466 Mass. 303, 307 (2013), and cases cited.

In order for the jury to find the defendant guilty of armed robbery, the Commonwealth was required to prove either that the defendant was armed with a dangerous weapon or that he knew that a coventurer was so armed, and that he or his coventurer assaulted the victim and took money or property from that victim with the intent (or shared intent) to steal it. See Williams, supra at 710; Commonwealth v. Britt, 465 Mass. 87, 100 (2013). The defendant argues that the Commonwealth presented insufficient evidence of (1) intent, (2) knowledge of an accomplice's gun, and (3) actual taking or stealing of property. We disagree.

There were several indications of the defendant's intent to commit armed robbery of the victim. He was aware that the victim sold marijuana, and had purchased it from the victim in the past. He admitted to patting the victim down looking for marijuana minutes after the shooting, and took a brown paper

bag, as well as the victim's cellular telephone, from the motor vehicle.  Further, the telephone calls between the victim and the unidentified caller, and between the defendant and the unidentified caller, support an inference that the defendant and a coventurer planned the victim's robbery.  The records indicated that both the victim and the defendant were in contact with the same telephone number, ending in 7471, on March 19, 2010, the day before the killing.

There were multiple telephone calls between the defendant and the 7471 number in the early morning hours of March 19, one call on the afternoon of March 19, and one at 9:42 P.M. that night.  These patterns of calls, along with evidence that the defendant had accurate information about the victim's whereabouts prior to the killing, allowed for the inference that the defendant and the unidentified caller were together prior to and during the shooting.  The defendant also made a telephone call to the 7471 number at 11:40 A.M. on March 20, which was shortly after the defendant left the police station.  See Commonwealth v. Caswell, 85 Mass. App. Ct. 463, 472 (2014), cert. denied, 135 S. Ct. 1440 (2015) (numerous telephone calls between defendant and coventurer exchanged "shortly before and after the victim was killed" permitted jury inference that defendant participated in planning crime).

In addition, there was a series of telephone calls between the victim and the 7471 number starting at 8:51 P.M. on March 19, up until 12:17 A.M. on March 20.  The victim was shot at approximately 12:20 A.M.  The user of the 7471 number did not call the victim's telephone after the victim was shot and killed.

There was also ample evidence that either the defendant possessed a firearm or his coventurer possessed one and the defendant knew about it.  The victim's brother testified that the victim had possessed a duffle bag containing a large quantity of marijuana and often had a large sum of money with him.  The defendant admitted that he knew the victim sold drugs. A reasonable juror could conclude that a plan to rob a drug dealer would include a gun where the victim's resistance was reasonably anticipated.  See Commonwealth v. Cannon, 449 Mass. 462, 470 (2007); Commonwealth v. Netto, 438 Mass. 686, 702-703 (2003).  Further, the gunshot residue on the cuffs of the defendant's jacket indicated that the defendant either fired a gun or was very close by when a gun was fired, permitting the inference that the defendant was aware that his coventurer had a gun.  See Commonwealth v. Johnson, 463 Mass. 95, 107 (2012).

In addition, the evidence that the defendant took the victim's cellular telephone and a paper bag after the shooting allowed for the inference that the defendant completed the

robbery.  Although the defendant offered alternative explanations for his actions, in determining whether a reasonable jury could find each element of the crime charged, we do not weigh supporting evidence against conflicting evidence. Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011).

Finally, the defendant's actions, including hiding his blood-stained leather jacket, and his misstatements, including his supposed interactions with the victim prior to the shooting, demonstrated his consciousness of guilt.  See Commonwealth v. Vick, 454 Mass. 418, 424 (2009) ("While a conviction may not be based solely on evidence of consciousness of guilt, . . . indications of a defendant's state of mind, coupled with other evidence, can be sufficient to establish guilt" [citation omitted]).

Although circumstantial, the evidence, taken in the light most favorable to the Commonwealth, was indeed sufficient to prove the defendant's guilt.  See Commonwealth v. White, 452 Mass. 133, 135 (2008) (circumstantial evidence is competent to establish guilt beyond reasonable doubt), and cases cited. Accordingly, the judge properly denied the defendant's motion for a required finding.

3.  Motion for new trial.  The defendant also argues that the motion judge, who was the trial judge, erred in denying his

motion for a new trial based on the Commonwealth's failure to produce exculpatory evidence.  Given the nature of the evidence and the parties' arguments at trial, there was no error.

The evidence in question was a police report from an interview of an individual named Marcus Dixon about an unrelated murder.  During that interview, the police learned that another man, Bryan Ingram, had said that he (Ingram) shot the victim in the homicide in which the defendant had been charged.[3]  The Commonwealth concedes that the evidence was not provided to the defendant despite a specific request for "any police reports or witness 'statements,'" and other evidence regarding "any and all cooperating witnesses . . . who [have] provided information and given a statement regarding the defendant."  Given the specific request, as well as the judge's finding that the evidence was

---

[3] Dixon said that Ingram had told Dixon that Ingram had "shot that white kid," referring to the victim.

The only reference to Ingram during the trial was struck from the record.  Although Ingram's alleged admission to Dixon was not disclosed before trial, the defendant was or should have been aware that Ingram had been investigated in connection with the victim's murder; during pretrial discovery, the Commonwealth provided the defendant with a different statement relating to both the defendant and Ingram.  That statement alleged that the defendant had admitted to another person that he was involved in a robbery with Ingram, and Ingram had told that person that the defendant "just better hold it down."  In that statement, the person also mentioned that Ingram lived on a street that was later associated with the 7471 number, at an address which the defendant later investigated.  Both parties anticipated the possibility that this statement would come in evidence; however, that person was ultimately not called to testify, and the statement was not introduced in evidence.

exculpatory,[4] we must determine "whether we can be confident that, even if the prosecution had supplied the report to the defendant[] in timely fashion, the report or available evidence disclosed by it would not have influenced the jury." Commonwealth v. Healy, 438 Mass. 672, 679-680 (2003), quoting Commonwealth v. Daye, 411 Mass. 719, 729 (1992). Nevertheless, the defendant had the burden to "demonstrate that a substantial basis exist[ed] for claiming prejudice from the nondisclosure" in order to receive a new trial (citation omitted). Healy, supra at 680.

The judge declined to grant the defendant's motion for a new trial because the Commonwealth's main theory was that the defendant had participated in the armed robbery and murder as a joint venturer.[5] After examining the evidence that the

_____

[4] The judge found that although Ingram's admission to being the shooter would not preclude the defendant's participation in the armed robbery, it would have forced the Commonwealth to prove the defendant's role as a coventurer only, and not as the principal.

[5] The prosecutor's closing argument relied almost entirely on the theory that the defendant was guilty as a joint venturer:

> "I said in my opening that the evidence may not show that the defendant shot the victim himself. But the evidence will show that if he didn't, he was with somebody who did. And you know this, in part, because of the gunshot residue on the cuffs of his jacket. . . . The evidence further shows that the defendant was communicating with someone else . . . . [T]he people on the street don't see a gun in [the defendant's] hand, so the defendant, indeed, may not have shot the victim himself. But if he

Commonwealth introduced at trial, the judge concluded that the exculpatory evidence did not affect the strength of the evidence supporting the view that the defendant was a joint venturer, even if not the shooter. In other words, proof that the defendant was not the shooter was immaterial given the strength of the evidence that he was present at the time of the shooting and participated in the armed robbery.

"The decision to deny a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or the trial was infected with prejudicial constitutional error. . . . Reversal is particularly rare where the judge who acted on the motion was also the trial judge." Commonwealth v. Jenkins, 458 Mass. 791, 803 (2011), citing Commonwealth v. Lucien, 440 Mass. 658, 669-670 (2004). Given the circumstances of this case, the judge's denial of the motion was not an abuse of discretion. The Commonwealth's theory of the case was joint venture and focused on the user of the 7471 telephone number as the defendant's coventurer. See Zanetti, 454 Mass. at 465 ("jurors may all agree that the defendant knowingly participated in the commission of the crime but differ as to whether he did so as a principal or a joint venturer"). As a result, here, as the

---

didn't do it himself, it happened during the commission of a joint venture."

judge implicitly recognized, the evidence of Ingram's claimed admission of having shot the victim was more likely to fill in the gaps of the joint venture (by identifying the second participant) than to demonstrate the defendant's innocence. Contrast Commonwealth v. Ellison, 376 Mass. 1, 21-22 (1978) (nondisclosed evidence tended to show that defendant was not involved in joint venture). Thus, in the circumstances of this case, the judge was warranted in concluding that a new trial was not called for.

4. Review under G. L. c. 278, § 33E. After a careful review of the entire record, we discern no reason to reduce the degree of guilt or grant a new trial pursuant to our powers under G. L. c. 278, § 33E.

Judgments affirmed.

Order denying motion for
a new trial affirmed.