MALONE, COMMONWEALTH vs., 100 Mass. App. Ct. 399

 
 COMMONWEALTH vs. PATRICK MALONE.

100 Mass. App. Ct. 399
 March 10, 2021 - October 13, 2021

Court Below: Superior Court, Suffolk County
Present: Green, C.J., Neyman, & Grant, JJ.

 

Homicide. Felony-Murder Rule. Joint Enterprise. Robbery. Evidence, Joint venturer, Photograph, Credibility of witness. Witness, Credibility. Global Positioning System Device. Practice, Criminal, Argument by prosecutor.

The evidence at a criminal trial was sufficient to prove that the defendant knowingly participated in a scheme to rob the victim [404-405]; further, the evidence was sufficient to prove that the defendant was guilty of murder in the second degree, where the Commonwealth was not required to prove that the defendant knew that a joint venturer was armed prior to the commission of the crime [405-407].

At a criminal trial, no substantial risk of a miscarriage of justice arose from the Commonwealth's question to a witness on direct examination about his understanding of a nonprosecution agreement he had made with the Commonwealth. [408-409]

The judge at a criminal trial did not abuse his discretion in admitting in evidence, over objection, a photograph depicting a global positioning system bracelet on the defendant's body, where the photograph, although cumulative of other evidence, was relevant to prove a critical issue in the case and was not inflammatory, and where the judge provided a specific limiting instruction to the jury. [409]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's remarks in closing argument that were grounded in evidence adduced at trial. [409-410]

INDICTMENTS found and returned in the Superior Court Department on February 1, 2013.

 The cases were tried before Christopher J. Muse, J., and a motion to set aside or reduce the verdict, filed on January 30, 2018, was considered by him.

 William S. Smith for the defendant.

 Erin D. Knight, Assistant District Attorney, for the Commonwealth.

 NEYMAN, J. Following a trial in the Superior Court, a jury convicted the defendant, Patrick Malone, of murder in the second

 Page 400 

 degree as a joint venturer, and unarmed robbery. [Note 1] On appeal, the defendant challenges the sufficiency of the evidence, the jury instruction on joint venture, the prosecutor's closing argument, a statement by an immunized witness, and the admission in evidence of a photograph depicting the defendant's global positioning system (GPS) bracelet. We affirm the judgments and the order denying the defendant's motion to set aside or reduce the verdict. [Note 2]

 Background. 1. Facts. We recite the facts adduced at trial, reserving certain details for later discussion. In 2012, the defendant lived at 61 Faneuil Street in the Faneuil Street housing development in the Brighton section of Boston. The defendant's friend, Robert Williams, lived at 41 Faneuil Street, which was also in the Faneuil Street housing development. The defendant attended elementary school with Williams, and they had been friends for years.

 In 2012, the victim, LeRoy Cooper, lived across the street from the Faneuil Street housing development. [Note 3] The victim was known to sell marijuana and had previously sold marijuana to a friend of the defendant. The defendant had also attempted to purchase marijuana from the victim in the past.

 On the afternoon of November 19, 2012, the victim was visiting his friend, Salar Yaraghi, at Yaraghi's apartment at One Longfellow Place in downtown Boston. The victim's acquaintance, Athanasios Paloukos, later joined them. Throughout that same day, the defendant and the victim communicated about a drug purchase via text messages and cell phone calls. [Note 4] The defendant wanted to buy marijuana from the victim, but claimed that he could not get a ride to Longfellow Place and thus needed the victim to come to Brighton. The victim told the defendant that he could not do so because he was "chillin by the garden," [Note 5] and "waiting on peeps too." The defendant again asked the victim to come to Brighton. The victim responded that the defendant could get a ride or take the "T." The victim also offered to pay for the defendant's taxicab fare for his return trip to Brighton. The defendant

 Page 401 

 then claimed that he could not leave due to his brother's curfew. Following additional texts and cell phone calls, the victim agreed to travel to Brighton. He texted, "Ok we are coming," to which the defendant responded, "Ight same place." What the defendant did not mention to the victim was that he was wearing a GPS bracelet, which tracked his movements and required him to be within a particular distance or "inclusion zone" at or near his residence on Faneuil Street. In the meantime, the defendant and Williams had multiple communications on their cell phones in the minutes leading up to the crime.

 At approximately 5 p.m., the victim, Yaraghi, and Paloukos drove to Brighton in a red, rented "Zipcar." Yaraghi drove the car, the victim rode in the front passenger's seat, and Paloukos rode in the rear seat directly behind Yaraghi. All three were unarmed. The victim, who was communicating on his cell phone with the defendant, provided directions to Yaraghi during the ride. Yaraghi parked near the Faneuil Street housing development and picked up the defendant and Williams. The defendant sat in the rear middle seat while Williams sat in the rear seat directly behind the victim. Yaraghi started to drive and took a right turn onto Market Street. Either the defendant or Williams advised Yaraghi to turn onto Morrow Road, "a quiet road" off Market Street. Yaraghi did so and then parked on Morrow Road.

 Inside the parked car, the victim passed a rectangular one-foot long bag of marijuana to the defendant. The prearranged sale price for the marijuana was $4,000. [Note 6] The victim "mentioned an amount of money," but neither the defendant nor Williams paid him. Instead, Williams opened the rear passenger's side door and left the car. The defendant then left the car, too, with the marijuana. According to Paloukos, the defendant and Williams "exit[ed] together." "[I]t was just a robbery, like they were just gonna run off at that point, but they weren't moving fast." The victim, Yaraghi, and Paloukos "started voicing concerns" and asked what was going on. Immediately thereafter, Williams reached back inside the car, pointed a black gun behind or under the headrest of the front passenger's seat, and fired a shot at the victim. Yaraghi fled from the vehicle while Paloukos "rolled up in a ball." The defendant and Williams fled from the scene and ran back to 

 Page 402 

Williams's home on Faneuil Street. [Note 7]

 After the defendant and Williams fled, Yaraghi returned to the scene. The victim was "really quiet at first," but then said, "Oh my God, I think I've been shot." He was "like crying and just kind of making like, you know, noises. . . . [His] breathing was getting very heavy." "He kept on holding his chest and gasping." Yaraghi drove to try to find a hospital, but ultimately pulled the car onto a dead-end street and called 911. [Note 8] Boston police officers and emergency medical services arrived there and attempted to render aid. The victim had a gunshot wound to the left chest area; he had no pulse or heartbeat, and he was not breathing. The emergency medical technicians "declared him deceased at the scene."

 Paloukos and Yaraghi spoke to Boston Police Detective Mark Maregni soon after the incident. [Note 9] Paloukos described and showed Detective Maregni the route they had traveled earlier and directed the detective to the area on Morrow Road where the shooting occurred. Boston police detectives found a single shell casing there. Two or three days later, Boston police detectives located a spent bullet near the scene on Morrow Road.

 Paloukos and Yaraghi subsequently identified the defendant and Williams from photographic arrays. Through their investigation, Boston police detectives learned that the defendant had been wearing a GPS bracelet and was at the crime scene at the critical time. See note 7, supra. They further obtained the cell phone records of the defendant, Williams, and the victim, which showed that the defendant and Williams had been in continual communication on their cell phones leading up to the shooting, and in the days following the crime.

 Page 403 

 2. Procedural and postjudgment matters. Before trial, a judge (not the trial judge) allowed the defendant's motion to sever his case from Williams's. [Note 10] The Commonwealth proceeded to trial on the theory that the defendant was guilty of murder in the first degree as a joint venturer on a theory of felony-murder, with a predicate felony of armed robbery. The defendant moved before trial to dismiss so much of the indictment as asserted murder in the first degree on the ground that there would be no evidence that the defendant knew that Williams was armed, but the judge deferred ruling on the motion. Following the close of the Commonwealth's case, the judge allowed the defendant's motion for a required finding of not guilty to the extent that he reduced the charge of murder in the first degree to murder in the second degree and reduced the charge of armed robbery to unarmed robbery. In his final charge, the judge instructed the jury on murder in the second degree based on malice. He also instructed the jury on the lesser included offense of involuntary manslaughter.

 After the judgments entered, the defendant filed a "motion to set aside the jury verdict and order the entry of a finding of not guilty or in the alternative reduce the verdict to guilty of the lesser included charge of involuntary manslaughter" (postjudgment motion). The judge denied the postjudgment motion in a written decision. He concluded, inter alia, that the jury could have found that the defendant "initiated the drug deal, an inherently dangerous activity," and "brought Williams to quash any anticipated resistance" and "inflict harm on the [victim] if the robbery went awry." The defendant "assumed a successful robbery of drugs would lead to violence, or at least resistance." He "then stole a substantial quantity of marijuana from the [victim] [and] . . . exited the vehicle without paying for it." Following the shooting, he "fled with [Williams] to his residence." The judge repeated his earlier determination that the evidence did not prove that the defendant knew that Williams was armed, and the judge expressed concern that he "may be masking the second degree murder conviction with activity that could be more reasonably . . . charged as involuntary manslaughter." Nonetheless, he concluded that the Commonwealth had met its burden to prove murder in the second degree on a theory of third prong malice, as it was "probable that the jury concluded the defendant intended to do an act which, in the circumstances known to [him], a reasonable

 Page 404 

 person would have known created a plain and strong likelihood that death would result." The defendant appeals from the judgments and from the order denying the postjudgment motion.

 Discussion. 1. Sufficiency of the evidence. The defendant argues that the Commonwealth presented insufficient evidence to sustain convictions of unarmed robbery and murder in the second degree. We apply the familiar test to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis and citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011). See Commonwealth v. Nelson, 370 Mass. 192, 203 (1976) (evidence need not require jury to draw inference; sufficient that evidence permits inference to be drawn). See also E.B. Cypher, Criminal Practice and Procedure § 37.10 (4th ed. 2014).

 a. Unarmed robbery. The defendant contends that there was insufficient evidence that he knowingly participated in a scheme to rob the victim. The claim is unavailing. "Under our statutes, as at common law, in order to sustain a charge of robbery, there must be proof of a larceny (1) 'from . . . [the] person,' and (2) 'by force and violence, or by assault and putting in fear'" (citation and footnote omitted). Commonwealth v. Jones, 362 Mass. 83, 86 (1972). See Commonwealth v. Matos, 95 Mass. App. Ct. 343, 351 (2019), quoting G. L. c. 265, § 19 (b) (unarmed robbery requires "taking property from someone's person or control 'by force and violence, or by assault and putting in fear'"). Furthermore, to the extent that the defendant was tried as a joint venturer, the Commonwealth was required to prove that the defendant "knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense." Commonwealth v. Zanetti, 454 Mass. 449, 468 (2009).

 Here, the jury could have found that the defendant crafted the scheme to lure the victim to Brighton, intended to rob him, and could not do so in any other location because the GPS bracelet limited his own mobility. The defendant knew that the victim had dealt drugs on prior occasions, knew that the victim was coming to Brighton with companions, and knew that he (the defendant)

 Page 405 

 was stealing an item valued at or around $4,000 and thus could expect resistance and the necessity of force. Accordingly, the defendant brought Williams, his close longtime friend, as "muscle" to handle the likely resistance and help carry out the robbery. See Commonwealth v. Housen, 458 Mass. 702, 708 (2011) (noting it would be unlikely that victim would turn over his money or drugs "absent some show of superior force"). See also Commonwealth v. Buth, 480 Mass. 113, 117, cert. denied, 139 S. Ct. 607 (2018); Commonwealth v. Cooley, 477 Mass. 448, 452 (2017). Indeed, the defendant and Williams were in frequent contact in the time leading up to the robbery. On entering the car containing the victim and his friends, the defendant or Williams directed them to turn onto a quiet side street to effectuate the crime in a private area. Finally, after completing the robbery, the defendant and Williams fled the scene together, retreated to Williams's home, and continued to communicate in the days following the crime. See Commonwealth v. Garcia, 470 Mass. 24, 31 (2014), citing Commonwealth v. Akara, 465 Mass. 245, 255 (2013) (defendant's actions after commission of crime, including retreat by perpetrators to defendant's apartment and discarding of bloodied clothing, "provided additional evidence of an intent to participate in a joint venture to commit the crimes charged").

 In short, the evidence showed that the defendant concocted a scheme to entice the victim to travel to the defendant's neighborhood, lure the victim down a quiet side street, and rob him of a substantial quantity of marijuana valued at $4,000. The eyewitness testimony, GPS evidence, cell phone logs, text messages, and police investigation supported and corroborated the above-referenced facts and reasonable inferences drawn therefrom. See Commonwealth v. Moran, 387 Mass. 644, 647 (1982) ("Criminal intent generally can be proved only by inferences from facts, and those inferences need only be reasonable"). In addition, the speed with which the robbery occurred did not negate a finding of force. See Jones, 362 Mass. at 89 (noting in context of purse snatching that "the force applied is sufficient to make the crime a robbery, even though the application of force may, in practice, be so quick as to deny the victim any opportunity to resist"). The evidence of the defendant's participation in the robbery was not only sufficient, but strong. Therefore, the judge did not err in denying the motion for a required finding of not guilty.

 b. Murder in the second degree. The defendant also claims that the judge erred in denying his motion for a required finding of not

 Page 406 

 guilty as to the charge of murder in the second degree. The defendant's sole argument in this regard is that, where the Commonwealth proceeded under a joint venture theory, it needed to prove that the defendant knew that Williams was armed prior to the commission of the crime. We disagree.

 In Commonwealth v. Britt, 465 Mass. 87, 100 (2013), the Supreme Judicial Court clarified that the Commonwealth is not required to "prove that a joint venturer knew that the principal was armed to return a conviction of murder based on deliberate premeditation." This is so because "[n]either possession nor use of a firearm is an element of murder in the first degree based on deliberate premeditation." Id. The Supreme Judicial Court has reaffirmed the holding in Britt and explicitly declined to overrule it. See Commonwealth v. Vacher, 469 Mass. 425, 445 (2014); Commonwealth v. Rosa, 468 Mass. 231, 245 (2014).

 Contrary to the defendant's claim, "the requirement of knowledge of a weapon in the context of murder in the first degree on a joint venture theory applies only where the conviction is for felony-murder and the underlying felony has as one of its elements the use or possession of a weapon." Britt, 465 Mass. at 100. Although the Commonwealth in its case-in-chief tried the murder in the first degree indictment on a theory of felony-murder, the judge allowed the defendant's motion for a required finding of not guilty as to the murder in the first degree and armed robbery charges. That ruling reduced the charges to the lesser included offenses of murder in the second degree and unarmed robbery. Insofar as the Supreme Judicial Court had prospectively eliminated felony-murder in the second degree, see Commonwealth v. Brown, 477 Mass. 805, 832 & n.4, 834 (2017) (Gants, C.J., concurring), cert. denied, 139 S. Ct. 54 (2018), for the remainder of trial the Commonwealth proceeded on a theory of murder in the second degree based on malice. [Note 11] Therefore, this was no longer a felony-murder case and thus, under Britt and its progeny, "there was no need for the Commonwealth to prove that the defendant knew [Williams was] armed with [a] gun[]." Rosa, 468 Mass. at 245. Accordingly, the defendant's claim fails. [Note 12] For the same reasons discussed supra, the judge did not err in declining to instruct the jury that the Commonwealth had to prove that the defendant knew that Williams was armed to find the defendant guilty of murder. See Britt, 465 Mass. at 100 ("in cases tried hereafter, juries should not be instructed that the Commonwealth must prove that a joint venturer knew that the principal was armed to return a conviction of murder based on deliberate premeditation"). [Note 13]

 Page 408 

 2. Witness vouching. The defendant next argues that the Commonwealth introduced inadmissible evidence designed to vouch for the credibility of a witness. Specifically, on direct examination, the prosecutor asked Yaraghi about his understanding of the nonprosecution agreement he had made with the Commonwealth. In response, Yaraghi testified, "[b]asically just tell the truth about everything and I won't be charged for the marijuana." As the defendant did not object to this testimony at trial, we review to determine whether any alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Here we discern no such risk.

 "We accept the general rule that on direct examination the prosecution may properly bring out the fact that the witness has entered into a plea agreement and that the witness generally understands his obligations under it." Commonwealth v. Ciampa, 406 Mass. 257, 264 (1989). However, "[a]ny attempt at bolstering the witness by questions concerning his obligation to tell the truth should [generally] await redirect examination." Id. Cf. Commonwealth v. Rolon, 438 Mass. 808, 813 (2003), (clarifying that although "[o]rdinarily, questions concerning an agreement's requirement that a cooperating witness give 'truthful' testimony should be reserved for redirect examination after cross-examination has attacked the witness's credibility based on the . . . agreement," there is no "absolute prohibition that prevents any and all direct examination reference to the agreement's terms concerning 'truthful' testimony"); Commonwealth v. Irving, 51 Mass. App. Ct. 285, 295 (2001) (questions on direct examination regarding witness's plea agreement were not premature where "[o]pening statements made clear that the credibility of [the witness] would be central" to both prosecution and defense).

 Here, the prosecutor's question to Yaraghi about his understanding of the agreement was not improper per se. See Rolon, 438 Mass. at 813; Commonwealth v. Rivera, 430 Mass. 91, 96 (1999). In addition, the defendant's strategy to undermine Yaraghi's credibility due to the favorable plea deal was apparent, and thus some inquiry into the agreement on direct examination was fair game. See, e.g., Rolon, supra at 814 ("the attack on [the witness's] credibility in connection with the plea agreement had 

 Page 409 

been mounted in explicit terms in defense counsel's opening statement"). Yaraghi's response presents a closer call, but even assuming that the testimony was premature and inappropriate, the reference was brief, there was no objection or motion to strike the testimony, and the prosecutor did not further pursue or raise the issue again. Under these circumstances, the alleged error did not create a substantial risk of a miscarriage of justice. Cf. Rivera, 430 Mass. at 97.

 3. Photograph of GPS bracelet. Finally, the defendant claims that the judge abused his discretion by admitting in evidence, over his objection, a photograph depicting the GPS bracelet on the defendant's body. He does not dispute the relevance of the photograph, but instead claims that it constituted unnecessary cumulative evidence and that its probative value was substantially outweighed by the danger of unfair prejudice. The claim is without merit.

 "The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." Commonwealth v. Waters, 399 Mass. 708, 715 (1987). Here, the photograph was relevant to prove a critical issue in the case: that the defendant wore a GPS bracelet that tracked his movements, placed him at the scene of the crime at the relevant time, and showed him fleeing the scene and returning to his coventurer's home. That the photograph was cumulative of testimonial evidence did not render it inadmissible. See Commonwealth v. Ramos, 406 Mass. 397, 407 (1990); Commonwealth v. Bys, 370 Mass. 350, 359-360 (1976). Further, the photograph was far from inflammatory. Contrast Commonwealth v. Darby, 37 Mass. App. Ct. 650, 654-656 (1994). Finally, the judge provided a specific limiting instruction to the jury and cautioned them "not to draw any adverse inference against [the defendant] just because he is wearing a GPS device." He also instructed that "[m]any citizens wear such devices who have not been adjudicated guilty of any crimes or committed any crimes associated with wearing such a device." The instructions were clear and negated any risk of prejudice.

 4. Closing argument. The defendant contends that the prosecutor erred in arguing to the jury that the defendant "engineered" the crimes and "orchestrated" the robbery. He further claims that the prosecutor should not have stated that "[t]here was no surprise or shock in [the defendant's] actions" because he knew of the

 Page 410 

 preplanned robbery, or that "th[e] defendant's actions resulted in [the victim's] death." Insofar as the defendant did not object to the prosecutor's closing argument at trial, our review is limited to whether any alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016). We discern no error and therefore no such risk. The prosecutor's comments were grounded in the evidence adduced at trial. There was abundant evidence that supported the claim that the defendant orchestrated and engineered the drug deal and robbery, and that he participated in the crimes that led to the victim's death. In addition, the judge instructed the jury before and after trial that closing arguments are not evidence. The judge's instructions were clear, and the defendant did not object thereto. See Commonwealth v. Kolenovic, 478 Mass. 189, 200 (2017).

 Conclusion. We affirm the judgments and the order denying the postjudgment motion.

So ordered.

FOOTNOTES
[Note 1] A count of possession of a firearm without a license was dismissed. 

[Note 2] The defendant's appeals from his convictions and from the denial of his motion to set aside or reduce the verdict were consolidated in this court. 

[Note 3] In the summer and fall of 2012, the victim also lived on Cape Cod, and "would go back and forth" between Cape Cod and Brighton. 

[Note 4] The contents of the text messages between the defendant and the victim were admitted in evidence. 

[Note 5] The TD Garden is located near Longfellow Place. 

[Note 6] Paloukos testified that the defendant and victim had arranged for the victim to sell one pound of marijuana to the defendant. Yaraghi testified that the victim handed a one-half pound bag of marijuana to the defendant. The precise quantity of marijuana is not critical to our analysis. 

[Note 7] Evidence from the GPS bracelet worn by the defendant showed that the defendant was at or near Williams's home at 41 Faneuil Street at approximately 5 p.m., at the intersection of Faneuil Street and Market Street at approximately 5:25 p.m., on Morrow Road at approximately 5:27 p.m., moving at a speed of five miles per hour near the intersection of Market Street and Gardena Street at approximately 5:28 p.m., and heading back toward Faneuil Street and heading northwest on Faneuil Street to 41 Faneuil Street at approximately 5:29 p.m. 

[Note 8] The victim had brought another one-half pound of marijuana in his backpack to Brighton. Before the police and emergency medical services arrived, Yaraghi and Paloukos decided to dispose of the marijuana. Accordingly, Yaraghi threw it over a wall at the end of the street. 

[Note 9] Paloukos and Yaraghi initially lied to the police and claimed that they had gone to Brighton to purchase marijuana. During subsequent police interviews, they both acknowledged that they had lied "out of fear," and admitted to traveling with the victim to Brighton to sell marijuana. 

[Note 10] Williams was tried separately and acquitted of all charges. 

[Note 11] The present case was tried after the Supreme Judicial Court issued its opinion in Brown, 477 Mass. 805. Consequently, the Commonwealth could not proceed on a theory of felony-murder in the second degree, as that theory no longer existed as a matter of law. 

[Note 12] The "defendant's challenge to the sufficiency of the joint venture evidence on appeal is limited to the issue whether he knew that the other joint venturer[] [was] armed." Rosa, 468 Mass. at 245 n.24. The defendant does not make "a more generalized sufficiency challenge." Id. See Commonwealth v. Brown, 55 Mass. App. Ct. 440, 448 (2002) ("An appellate court is not obliged to go beyond the issues raised by the appellant, see Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]"). See also Commonwealth v. Cullity, 470 Mass. 1022, 1022 n.2 (2015) (noting absence of plenary review). See also note 13, infra. 

[Note 13] Although the defendant appealed from the order denying his postjudgment motion, he did not argue that the more appropriate verdict was involuntary manslaughter. To the contrary, he contended at oral argument that the evidence was likewise insufficient to support a verdict of the lesser included offense of involuntary manslaughter. That contention is unpersuasive on the facts of this case. See Commonwealth v. Pagan, 471 Mass. 537, 547, cert. denied, 577 U.S. 1013 (2015) (unlike third prong malice for murder in second degree, wanton or reckless conduct for involuntary manslaughter requires proof only of "intentional conduct that create[s] a high degree of likelihood that substantial harm will result to another person" [citation omitted]). See also Brown, 477 Mass. at 832-833 (Gants, C.J., concurring) ("Where a defendant participates in an armed robbery but does not have the requisite intent for murder, the defendant will be found guilty of involuntary manslaughter if he or she acted wantonly or recklessly"). In his decision denying the defendant's postjudgment motion, the judge found that the defendant acted with third prong malice but noted that guilt under this theory presented a close question. Our case law recognizes that "[a] fine line distinguishes murder in the second degree based on third prong malice from the lesser included offense of involuntary manslaughter." Commonwealth v. Lyons, 444 Mass. 289, 293 (2005). On the one hand, planning and implementing the robbery of a drug dealer does not invariably create a "plain and strong likelihood of death" as required for murder in the second degree. Commonwealth v. Earle, 458 Mass. 341, 346 (2010). On the other, the defendant's actions here, including the planning of the drug deal and robbery, his lifetime friendship and association with Williams, his coaxing of the victim to Brighton, his luring of the victim down a quiet side street, the brazen robbery of an item valued at $4,000, and the retreat to Williams's home could have been viewed by the jury as more of a premeditated plan of attack than mere wanton or reckless conduct. See Commonwealth v. Gendraw, 55 Mass. App. Ct. 677, 685-686 (2002) (evidence that defendant arranged drug deal with victim, was present at scene of murder, fled with shooter after the crime, and other evidence indicative of prearrangement and consciousness of guilt sufficient to prove murder in second degree as joint venturer). We further note that the evidence here would have presented a compelling, if not clear, case of felony-murder in the second degree under that now-abrogated theory. See Brown, 477 Mass. at 842 (Gaziano, J. concurring, with whom Lowy and Cypher, JJ., joined) (forewarning that elimination of felony-murder in second degree will create confusion such that traditional "felony-murder liability will hinge on fine gradations between third-prong malice, wanton [or] reckless involuntary manslaughter, negligence, and accident -- with predictably unpredictable results"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.