NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-841

COMMONWEALTH

vs.

WILFRIDO CASTILLO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Wilfrido Castillo, was convicted of enticement of a child under sixteen (child enticement).[1]  On appeal, he contends that (1) the evidence was insufficient to support his conviction, (2) the jury instructions on child enticement were erroneous and created a substantial risk of a miscarriage of justice, (3) the verdict slip failed to reflect the elements of child enticement, (4) the judge erroneously admitted duplicate

_____

[1] The defendant was also charged with witness intimidation, unauthorized access to a computer system, and indecent assault and battery on a child under fourteen.  The judge dismissed the count of unauthorized access to a computer system at the request of the Commonwealth.  The jury found the defendant not guilty of witness intimidation and indecent assault and battery on a child under fourteen.

first complaint testimony, and (5) the prosecutor's opening statement, questioning of witnesses, and closing argument contained errors that created a substantial risk of a miscarriage of justice.  Because we agree with the defendant that the judge's instructions were incomplete, we vacate the defendant's conviction.

Background.  The victim became friends with the defendant's stepdaughter[2] in the summer of 2013.  A few weeks after the victim and the defendant's stepdaughter began "hanging out," the victim met the defendant.  The victim was thirteen years old at the time.[3]  The defendant often drove the victim and his stepdaughter places and watched movies with them at his house.

On August 31, 2013, the victim and the stepdaughter spent the day together and returned to the stepdaughter's house.  At approximately midnight, the defendant, the victim, the stepdaughter, and the stepdaughter's boyfriend were watching a movie in the living room.  At that time, the victim received a text message from an unfamiliar number.  The person who sent the

---

[2] The defendant was the "boyfriend" of the victim's friend's mother.  However, throughout trial the victim referred to the defendant as her friend's "stepdad" or "stepfather."  Likewise, the victim's friend referred to the defendant as her "stepdad," and the defendant characterizes the victim's friend as his "stepdaughter" in his appellate brief.

[3] The victim turned fourteen shortly before trial.

text identified himself as the defendant.[4]  The defendant sent the victim text messages stating that he "liked" her, that he thought she was "pretty," and that he thought she liked him because she was "always looking at him."  He also sent the victim a message asking her to "meet him in the bathroom."  At some point, the defendant sent the victim a message asking her to delete the texts, and when she replied that she did, he "texted [her] back, I don't believe you."  Later in the text exchange, the defendant wrote, "I'm sorry" and called the victim a "good girl."

After they exchanged messages, the defendant moved toward the bottom of the couch where the victim was sitting and sat on the ground in front of her.  He turned towards her, asked to see her phone, and "took it out of [her] hands."  The victim "snatched" her phone back from him.  A few minutes later, the defendant stood up, "looked directly in [the victim's] eyes," and rubbed his hand up her thigh.  The rubbing "started by" the victim's knee and "then it went up."  The victim was "wicked scared," "shaking," "panicking" and "really freaking out," but "kind of like stayed still."  She began texting and calling members of her family, including her aunt, trying to find

_____

[4] The defendant had the victim's "telephone number," and had called her at that number in the past to reach his stepdaughter.

3

someone to pick her up from the stepdaughter's house, but was unable to reach them. "[F]inally," the victim was able to reach her cousin, and "told her that she needs to come get me," as the victim believed that she was "not safe." The victim then walked into the stepdaughter's bedroom to retrieve her belongings. The defendant followed her into the bedroom. After the victim fabricated an excuse to explain why she was leaving, the defendant apologized to her and told her that she was a "good girl." The victim left the house, saw her aunt's vehicle, and ran to it.

Discussion. 1. Sufficiency of the evidence. We review the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis and citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "If, from the evidence, conflicting inferences are possible, it is for the [factfinder] to determine where the truth lies, for the weight and credibility of the evidence is wholly within [its] province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011). In addition, "[c]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt . . . and the reasonable inferences drawn from such evidence need not be

4

necessary or inescapable, only reasonable and possible" (quotations and citations omitted).  Commonwealth v. MacCormack, 491 Mass. 848, 854 (2023).

"The crime of child enticement has four elements:  (1) 'Any one who entices,' (2) 'a child under the age of 16, or someone he believes to be a child under the age of 16,' (3) 'to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space,' (4) 'with the intent that he or another person will violate [one of several enumerated statutes] . . . or any offense that has as an element the use or attempted use of force.'"  Commonwealth v. LaPlante, 73 Mass. App. Ct. 199, 202 (2008), quoting G. L. c. 265, § 26C.  In the present case, the Commonwealth proceeded on a theory that the defendant enticed the victim intending to commit indecent assault and battery on a child under fourteen, in violation of G. L. c. 265, § 13B, one of the statutes enumerated in the child enticement statute, G. L. c. 265, § 26C.

The defendant first contends that the Commonwealth failed to prove that he intended to commit a crime against a person he knew or believed to be under the age of fourteen.  We disagree.

> "When the statute the defendant is alleged to have intended to violate is a strict liability statute . . . the Commonwealth is required to prove beyond a reasonable doubt, as an element of the crime of child enticement, that the defendant intended that his advances be directed to an underage person (i.e., under the age of fourteen for purposes of § 13B)" (emphasis omitted).

5

Commonwealth v. Filopoulos, 451 Mass. 234, 238 (2008). The Commonwealth is not required to prove that the defendant knew the exact age of the child, but that "his intention was to direct his sexual advances to" a person under the age of fourteen. Id. See Commonwealth v. Disler, 451 Mass. 216, 228 (2008). "[A] person's knowledge or intent is a matter of fact which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial" (quotation and citation omitted). Commonwealth v. Schoener, 491 Mass. 706, 715 (2023).

Here, the Commonwealth presented sufficient evidence for a rational jury to find that the defendant knew or believed that the victim was under fourteen. The evidence showed that the victim and the defendant's stepdaughter were close friends, and due to that friendship, the defendant spent time with and around the victim. Indeed, in the two weeks leading up to the incident, the victim and stepdaughter "hung out" on almost a daily basis, including "a lot" of time at the defendant's house.[5] Further, the jurors heard that the victim was thirteen years old

---

[5] The Commonwealth did not present evidence of the stepdaughter's age during its case-in-chief. Called as a witness by the defendant, the stepdaughter testified that she was fifteen years old at the time of trial in March of 2014.

6

at the time of the incident, did not "turn fourteen" until shortly before trial, was in eighth grade at the time of trial, and thus was between seventh and eighth grade at the time of the crime. In addition, the jurors had the opportunity to observe her appearance during trial. See Commonwealth v. Pittman, 25 Mass. App. Ct. 25, 27 (1987) ("[p]hysical appearance may be considered as an element in judging age").[6] The Commonwealth also presented abundant evidence of the defendant's consciousness of guilt. He asked the victim to delete the text messages he sent to her, grabbed her cellphone to try to delete them himself, apologized to her, and told her she was a "good girl" and that he "didn't mean to do that." See Disler, 451 Mass. at 231 ("recognizing the criminal nature of the planned conduct, the defendant repeatedly told [the victim] that they had to be careful"). Viewing the totality of evidence presented at trial in the light most favorable to the Commonwealth, there was sufficient evidence for the jury to infer that the defendant

---

[6] The Commonwealth notes in its brief that defense counsel referred to the victim in closing argument as a "petite 13 year old." Although this observation was consistent with the Commonwealth's argument that the victim's age was apparent from, inter alia, her youthful appearance, closing arguments do not constitute evidence and the jury was instructed to that effect. Thus, we do not consider defense counsel's statement in our analysis. See Commonwealth v. Malone, 100 Mass. App. Ct. 399, 410 (2021) (judge properly instructed jury "before and after trial that closing arguments are not evidence").

"intended that his advances be directed" to a person under the age of fourteen.  See Filopoulos, 451 Mass. at 238.

The defendant next contends that there was insufficient evidence that he intended to commit an indecent assault and battery on the victim.  Again, we disagree.  Although an overt act by the enticer is not required, more than "merely speaking words" is necessary -- the enticer's conduct must be accompanied by the requisite criminal mens rea.  LaPlante, 73 Mass. App. Ct. at 202.  See Disler, 451 Mass. at 222 ("[I]n addition to enticing words or gestures . . . the person who entices [must do] so with the intent to violate one or more of the enumerated criminal statutes").

Here, the Commonwealth presented evidence that the defendant texted the victim and told her that he thought she was pretty, that he liked her, and that he thought that she liked him.  The content of the defendant's messages, his subsequent rubbing of the victim's thigh, and the consciousness of guilt evidence referenced above, were sufficient to demonstrate his intent to commit an indecent assault and battery on her.  The defendant's argument that it was "equally plausible that he wanted to talk to [the victim] alone, or chat with her further" is not persuasive in view of the evidence in the light most favorable to the Commonwealth, including the touching of her thigh, and the timing and content of the text messages.  See

8

Commonwealth v. Santiago, 53 Mass. App. Ct. 567, 574-575 (2002) (defendant's intent permissibly inferred in part from "the absence of any other motive").

2. Jury instructions. The defendant claims that the judge failed to instruct the jury that the Commonwealth was required to prove that he intended that his advances be directed to a person under the age of fourteen. Because there was no objection to the instructions, our review is limited to determining "whether an error occurred and, if so, whether that error created a substantial risk of a miscarriage of justice." Commonwealth v. Arias, 84 Mass. App. Ct. 454, 464 (2013). "We evaluate jury instructions as a whole and interpret them as would a reasonable juror." Commonwealth v. Kelly, 470 Mass. 682, 697 (2015).

Where a defendant is charged with child enticement, the Commonwealth is required to prove beyond a reasonable doubt "not only that the defendant enticed a person under the age of sixteen, or someone he believed to be under the age of sixteen, but also that the defendant so acted with the intent to violate one or more of the enumerated criminal statutes." Filopoulos, 451 Mass. at 238. Here the Commonwealth's theory was that the defendant enticed the victim so that he could commit an indecent assault and battery on a child under the age of fourteen in violation of G. L. c. 265, § 13B, a strict liability statue. As

9

noted supra, in these circumstances, the "Commonwealth is required to prove beyond a reasonable doubt, as an element of the crime of child enticement, that the defendant intended that his advances be directed to" a person under the age of fourteen. Filipoulous, supra.

With these principles in mind, we turn to the judge's instructions in the present case. The judge first instructed that the Commonwealth had the burden to prove the following elements of child enticement:

> "First, that the alleged victim here . . . was a child under the age of 16 or a person whom the defendant believed to be under 16 at the time of the alleged offense. Second, that the defendant enticed [the victim] to remain within a dwelling. Third, that the defendant did so with the intent that he would commit the offense in this case of an indecent assault and battery on a child under the age of 14."

The judge elaborated briefly on each of the elements. With respect to the third element, the judge told the jury that "the Commonwealth must prove beyond a reasonable doubt that by this enticement the defendant intended to commit the offense of indecent assault and battery as I'm going to describe that offense to you shortly." The judge next summarized the elements of child enticement again:

> "if you find the Commonwealth has proved all three of those things beyond a reasonable doubt, again that [the victim] was under the age of 16, a child under the age of 16 at the time; second, that the defendant enticed [the victim] to remain within a dwelling as I've defined that term for you; and third, that he did so with the intent that he would

10

commit an indecent assault and battery on this child then you should find the defendant guilty . . . of the charge of enticing a child under 16."

The judge subsequently instructed the jury on the elements of indecent assault and battery on a child under fourteen as follows:

"First is that the alleged victim . . . in this case, was not yet 14 years of age at the time of the alleged offense. So she was under 14 years of age at the time of offense. Second, that the defendant committed an assault and battery on that child. Assault and battery in this context is essentially the intentional touch -- touching of another person without legal justification or excuse. And third, the Commonwealth must prove beyond a reasonable doubt that the assault and battery was indecent as that word is commonly understood and measures by common understanding and practices. Jurors, again let me just go through those one more time. First . . . [t]he alleged victim . . . was not yet 14 years of age. So if she was 14 or older it would not be appropriate under this charge. It has to be under 14 at the time. Second, that the defendant committed an assault and battery on that child, again which would be essentially the intentional touching of another person without legal justification or excuse. So an accidental touching would not fall under this. It must be an intentional touching. And third, the Commonwealth . . . must prove beyond a reasonable doubt that the assault and battery was indecent as that word is commonly understood measured by common understanding and practices . . . . So, Jurors, if you find that the Commonwealth has proved those three things beyond a reasonable doubt, that the complainant . . . was not yet 14 years of age at the time; second, that the defendant committed an assault and battery on that child as I've just described it; and third, that the assault and battery was indecent as the word is commonly understood and as I've just described or defined that for you, then you should find the defendant guilty of indecent assault and battery on a child."

The defendant contends that the judge's instructions failed to inform the jury that the defendant's specific intention to

11

direct his advances on a child under fourteen was an essential element of the enticement charge. See Filopoulos, 451 Mass. at 242-243. We agree. In Filopoulos, the defendant similarly was charged with child enticement with the intent to commit indecent assault and battery on a child under the age of fourteen. Id. at 234-235. However,

> "[a]t no point in his charge did the judge expressly inform the jury that, to satisfy the intent element of the child enticement statute . . . on the basis of an intent to violate G. L. c. 265, § 13B (indecent assault and battery on a child under the age of fourteen), the Commonwealth was required to demonstrate that the defendant intended the object of his advances to be a child under the age of fourteen."

Id. at 242-243. As the instructions did not adequately convey to the jury the Commonwealth's burden to prove that the defendant specifically intended to direct his advances on a child under the age of fourteen, the Supreme Judicial Court determined that the error created a substantial risk of a miscarriage of justice. Id. at 243.

In the present case, the instructions informed the jury that the Commonwealth needed to prove that the defendant enticed the victim "with the intent that he would commit the offense in this case of an indecent assault and battery on a child under the age of 14." The defendant was also charged with indecent assault and battery on a child under the age of fourteen, and in that context, the judge further instructed that the Commonwealth must prove the elements of indecent assault and battery on a

12

child under the age of fourteen -- i.e., that the victim was not yet fourteen years of age at the time of the alleged offense; that the defendant committed an assault and battery on that child; and that the assault and battery was "indecent." The instructions on child enticement and indecent assault and battery on a child under fourteen, standing alone, were correct. However, just as in Filopolous, the instructions viewed as a whole never conveyed to the jury that for the enticement charge, "the Commonwealth was required to demonstrate that the defendant intended the object of his advances to be a child under the age of fourteen."[7] Filopoulos, 451 Mass. at 242-243. See Note 1 to Instruction 6.560 of the Criminal Model Jury Instructions for Use in the District Court (2011).

We thus turn to whether the deficiency in the instruction created a substantial risk of a miscarriage of justice. See Commonwealth v. Desiderio, 491 Mass. 809, 815-816 (2023). "The substantial risk standard requires us to determine if we have a

_____

[7] The Commonwealth argues that Filopoulos is distinguishable because the judge in that case "specifically told [the jury] that the Commonwealth need not prove the defendant's knowledge as to the alleged victim's age." Filopoulos, 451 Mass. at 243. This argument is unavailing. With or without the above-referenced language, the instruction in the present case omitted a required element of child enticement -- the defendant's intent that the object of his advances be a child under the age of fourteen. Thus, the error in the present case mirrors the error in Filopoulos. See id. at 242-243.

13

serious doubt whether the result of the trial might have been different had the error not been made" (quotation and citation omitted).  Id.  "[T]o determine whether a substantial risk of a miscarriage of justice is created by the omission of a required element from the jury instructions, the question is . . . whether the presence of the omitted element was an ineluctable, or inescapable, inference from the evidence presented at trial." Id. at 820.

Here, it was not an inescapable inference that the defendant "intended the object of his advances to be a child under the age of fourteen."  Filopoulos, 451 Mass. at 243.[8] While the evidence presented at trial "may have been sufficient for the jury to infer" that the defendant had knowledge of the victim's age or intended that she be under the age of fourteen, such an inference was "hardly ineluctable."  Desiderio, 491 Mass. at 821-822.  The case hinged on a question of credibility, and the evidence, while more than sufficient to survive a required finding of not guilty, was not overwhelming.  The instruction lowered the Commonwealth's burden of proof and created a risk that the jury would impermissibly find that the Commonwealth had satisfied the element of the defendant's intent

---

[8] We note that the jury acquitted the defendant on the count of indecent assault and battery on a child under the age of fourteen.

14

based on evidence that he believed the victim was under the age of sixteen or based on the victim's stated age. We are thus constrained, under Desiderio, to conclude that the error may have materially influenced the jury's verdict, requiring that the defendant's conviction be vacated.

3. Verdict slip. The defendant further claims that the verdict slip "misstated the elements" of child enticement because it "did not require [the jury] to find that [the defendant] intended to entice 'a child under the age of 14.'" Because the defendant did not object to the verdict slip that was used, we review the claim of error for a substantial risk of a miscarriage of justice. See Arias, 84 Mass. App. Ct. at 464.

The charge listed on the verdict slip read, "Enticing a Child Under Age 16." We agree with the Commonwealth that the charge correctly reflected the title of the statute under which the defendant was charged. Standing alone, we discern no error in the content of the verdict slip, and the defendant cites no persuasive authority to the contrary. But see Commonwealth v. McCarthy, 37 Mass. App. Ct. 113, 117-118 (1994) (appearance of "an abbreviated version of the offense" on verdict slip did not create substantial risk of miscarriage of justice where "the judge correctly instructed the jury with respect to all of the elements of the offense").

15

4.  First complaint testimony.  The defendant argues that the judge admitted duplicative first complaint evidence, resulting in a substantial risk of a miscarriage of justice. Under the first complaint doctrine, evidence of the victim's report of abuse is limited to "the first person told of the sexual assault."  Commonwealth v. Aviles, 461 Mass. 60, 67-68 (2011).  "The first complaint doctrine does not, however, 'prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible.'"  Id. at 69, quoting Commonwealth v. Arana, 453 Mass. 214, 220-221 (2009).  The judge designated the victim's cousin as the first complaint witness.

The defendant challenges the admission of an excerpt of a police report detailing parts of the victim's accusation, which the trial judge read aloud to the jury due to the officer's unavailability.  The challenged portion of the report consists of what the victim told the officer about the text messages she received from the defendant.  We discern no error in the admission of the excerpt where it served an impeachment purpose and was not admitted for the purpose of corroborating the victim's testimony.  The defendant had intended to call the officer as a witness, and due to his unavailability, stipulated to the content of the report in order to highlight inconsistencies in the victim's testimony.  Moreover, the

16

inclusion of the portion detailing the text messages ensured that the jury was not left with the impression that the victim had only reported the defendant touching her thigh, and thus it was admissible as it "serve[d] to clarify the context of the admitted portion" (quotation and citation omitted).  Aviles, 461 Mass. at 75.

The defendant also challenges the admission of testimony that the victim reported the incident to others.  As the Commonwealth concedes, much of the challenged testimony constituted subsequent complaint testimony and should have been struck.  See Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) (victim "should not have been allowed to testify" that she "told various other people").  Even so, we discern no substantial risk of a miscarriage of justice where the defendant solicited additional testimony from the victim on cross-examination about her subsequent reports of the allegation to others.  See Commonwealth v. McCoy, 456 Mass. 838, 851-852 (2010) ("the defense capitalized on inconsistencies in [the victim's] testimony during the cross-examination" which "inured to the defendant's benefit").  The subsequent references to the victim's complaints were brief, and the prosecutor did not use the additional testimony in her closing argument.  See Commonwealth v. Roby, 462 Mass. 398, 409-410 (2012).

17

5. _Prosecutorial misconduct_. The defendant argues that errors in the prosecutor's opening statement, direct examination, and closing argument amounted to prosecutorial misconduct. As the defendant did not object to the claimed errors, our review is again limited "to determine if the statements were error, and, if so, whether they created a substantial risk of a miscarriage of justice." Commonwealth v. Sanchez, 96 Mass. App. Ct. 1, 9 (2019).

During her direct examination, the prosecutor asked the victim about how the defendant was related to the stepdaughter and how he behaved around the stepdaughter and the victim. We discern no error in this line of questioning. The victim's brief testimony about the defendant's previous behavior was relevant and admitted for the limited purpose of showing the nature of the relationship between the victim and the defendant. See Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006) (in sexual assault cases, evidence of uncharged conduct "may be admissible to give the jury a view of the entire relationship between the defendant and the alleged victim").

We agree that the prosecutor erred in stating in her closing argument that the jury "saw who this defendant is" and "[t]hat is who he is as a person." Nonetheless, this error did not rise to the level of creating a substantial risk of a miscarriage of justice. The remarks were fleeting, and the

judge instructed the jury, before opening statements and in his final charge, that opening statements and closing arguments are not evidence.

Also in her closing argument, the prosecutor described the victim as "emotionally scarred" and "brought [] to tears on the stand." This argument was not improper. The prosecutor was permitted to address the victim's demeanor during her testimony. See Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999) ("A prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs"). In addition, the judge instructed the jury to render a verdict "based solely on a fair consideration of the evidence," and that they "may not be swayed by prejudice nor by sympathy." See Commonwealth v. Anderson, 445 Mass. 195, 209-210 (2005) (judge mitigated any potential prejudice by instructing jurors, inter alia, "not to base their verdicts on any sympathy or emotion").

Finally, there was no error in the prosecutor's reference to first complaint testimony in her opening statement and closing argument. During her opening statement, the prosecutor told the jury that "at the close of the evidence you will have no doubt what happened on [August 31, 2013] . . . . You will

19

also know, because you'll hear from [the first complaint witness]" about "what [the victim] told her."  This was an accurate preview of the first complaint testimony that was later admitted.  See Commonwealth v. Qualls, 440 Mass. 576, 586 (2003) ("[t]he prosecutor could state in her opening statement anything she reasonably, and in good faith, expected to prove").  There was likewise no error in the prosecutor's comment in her closing argument that the jury should consider the first complaint testimony as supportive of the victim's credibility.  The purpose of first complaint testimony is to help the jury assess the veracity of the victim's accusations.  See Commonwealth v. King, 445 Mass. 217, 219 (2005), cert. denied, 546 U.S. 1216 (2006).  Furthermore, the judge instructed the jury on the proper use of first complaint testimony, both at the time it was admitted and at the close of the evidence.

Conclusion.  The defendant's conviction of enticement of a child under sixteen is vacated and the verdict is set aside.

So ordered.

By the Court (Blake, C.J.,
  Neyman & Grant, JJ.[9]),

Paul Little

Clerk

Entered:  March 21, 2025.

---

[9] The panelists are listed in order of seniority.

20